UNITED STATES of America, Plaintiff,

v.

Kurt BRIGMAN, aka Curt Brigman, Defendant.

UNITED STATES of America, Plaintiff,

v.

Terry TONASKET, Defendant.

UNITED STATES of America, Plaintiff,

v.

John COOK, Defendant.

UNITED STATES of America, Plaintiff,

v.

Joanne COOK, aka Jody Cook, Defendant.

Nos. CR–94–093–JLQ to CR–94–096–JLQ.

United States District Court,
E.D. Washington.

Sept. 19, 1994.

Kris McLean, Asst. U.S. Atty., Helena, MT, for plaintiff.

Aaron L. Lowe, Spokane, WA, for defendant in No. CR–94–093–JLQ.

Robert E. Kovacevich, Spokane, WA, for defendant in No. CR–94–094–JLQ.

Leslie R. Weatherhead, Witherspoon, Kelley, Davenport & Toole, Spokane, WA, for defendant in No. CR–94–095–JLQ.

Robert B. Henderson, Henderson & Kellman, Spokane, WA, for defendant in No. CR–94–096–JLQ.

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND GRANTING DEFENDANTS' MOTION TO SUPPRESS EVIDENCE AND RETURN PROCEEDS **INTER ALIA**

QUACKENBUSH, Chief Judge.

■ **BEFORE THE COURT** are Defendants John Cook's and Terry Tonasket's Motions to Dismiss the Indictments pursuant to Fed.R.Crim P. 12(b)(2) (CR–94–094, Ct. Rec. 38 and CR–94–095, Ct. Rec. 52) and Defendant John Cook's Motion for Suppression of Evidence and Return of Proceeds pursuant to Fed.R.Crim.P. 12(b)(3) (CR–94–095, Ct. Rec. 41).* Assistant United States Attorney Chris McLean represents Plaintiff. Aaron Lowe represents Defendant Kurt Brigman. Bob Kovacevich represents Defendant Terry Tonasket. Leslie Weatherhead represents Defendant John Cook. Bob Henderson represents Defendant Joanne Cook.

A hearing on Defendants' pretrial motions was held on July 29, 1994. The court reserved ruling on Defendants' Motion to Dismiss and Motion to Suppress Evidence and Return Proceeds, and asked the parties to submit additional authorities regarding the rights of Indians under Washington law to possess unstamped cigarettes. On August 30, 1994, after reviewing the supplemental briefing, the court heard further argument on the motions telephonically. Having reviewed the record, including the supplemental briefing, heard from counsel on several occasions, and being fully advised in this matter, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss the Indictments is **GRANTED** and Defendants' Motion to Suppress Evidence and Return Proceeds is **GRANTED**. However, the rulings herein should not be construed in any way to interfere with the right of the State of Washington to tax and require payment by Indian cigarette retailers of State taxes on the sale of cigarettes to non-Indians, as discussed **infra**. See pp. —— – ——.

## STATEMENT OF THE CASE

Defendants, enrolled members of the Colville Indian Tribe, are charged with conspiracy to violate the Contraband Cigarette Trafficking Act (CCTA), 18 U.S.C. § 2341, **et seq.**, which makes it unlawful for any person to knowingly ship, transport, receive, possess, sell, distribute, or purchase "contraband cigarettes." 18 U.S.C. § 2341 defines "contraband cigarettes" as

a quantity in excess of 60,000 cigarettes, which **bear no evidence of the payment of applicable State cigarette taxes** in the State where such cigarettes are found, **if such State requires a stamp,** impression, or other indication to be placed on packages or other containers of cigarettes **to evidence payment of cigarette taxes,** and which are in the possession of any person . . .

(Emphasis added.)

The Indictments in this case charge these Defendants with a conspiracy to knowingly and willfully transport, receive, and possess cigarettes "which bore no evidence of the payment of applicable State cigarette taxes as required by Washington State law . . ." The Government's prosecution of these Defendants is based upon that portion of the CCTA which makes it an offense to transport and/or possess cigarettes without **required** tax stamps affixed. The Indictments are based only on the contention that these Defendants agreed to and did obtain cigarettes from Montana distributors that did not bear Washington State tax stamps, transported the unstamped cigarettes across state lines into Washington, and possessed the unstamped cigarettes in Washington.

■ What is not at issue in this case is the authority of the State of Washington to impose and enforce collection of a tax upon the purchase of cigarettes by non-Indians from

---

* All Defendants have joined in all Co–Defendant's Motions. Therefore, John Cook's and Terry Tonasket's Motions to Dismiss and John Cook's Motion to Suppress Evidence and Return Proceeds will be treated as a joint motion of all Defendants to dismiss and a joint motion of all Defendants to suppress evidence and return proceeds.

Indian smoke shops. That right is clearly established. *See, Department of Taxation & Finance of New York v. Milhelm Attea & Bros., Inc.,* —— U.S. ——, 114 S.Ct. 2028, 129 L.Ed.2d 52 (1994). Rather, the issue is whether Washington law prohibits a tribal Indian from obtaining unstamped cigarettes out of state, transporting them into Washington, and possessing the unstamped cigarettes in Washington as a violation of state law, thereby forming the necessary predicate offense for application of the federal Contraband Cigarette Trafficking Act as to these Defendants.

Clearly, a violation of the CCTA requires, as a predicate, a violation of state law. If Washington law does not prohibit these Defendants from obtaining unstamped cigarettes out of state, transporting them into Washington and possessing them in Washington, they cannot be guilty of violating the federal criminal CCTA as charged in the Indictments.

The Government recognizes that it has a problem in that "there is an apparent, seeming conflict in what the State of Washington [statutes and] regulations say and what the policy of the Department of Revenue has been since 1988." *Transcript of Proceedings, Pretrial Conference/Motion Hearing, July 29, 1994* at p. 8. The court finds that this "conflict" is a real one, rather than an apparent one, and creates an insurmountable hurdle for the Government in these cases.

The Government charges as overt acts that:

> On or about October 31, 1991 John Cook traveled from J & J's Smoke Shop, Okanogon, Washington to the Busted Ass Ranch, Arlee, Montana for the purpose of picking up cigarettes which bore no evidence of the payment of applicable State cigarette taxes as required by the State of Washington.

> On or about October 31, 1991 John Cook transported cigarettes which bore no evidence of the payment of applicable State cigarette taxes as required by Washington State law from the Busted Ass Ranch, Arlee, Montana to J & J's Smoke Shop, Okanogon, Washington.

The other charges contained in the Indictments are identical except for the name of the Defendant involved, and the name and location of the Washington smoke shop involved. These acts are not prohibited under Washington statutes and regulations, although these acts are not in accordance with an unwritten policy of the Washington Department of Revenue.

Washington law, found in the Revised Code of Washington (RCW) and the Washington Administrative Code (WAC), clearly provides that enrolled Indians are entitled to purchase and possess unstamped cigarettes for their own consumption and/or for sale to other tribal Indians. Additionally, as conceded by counsel for the Government in the August 30, 1994 arguments, there is no RCW or WAC provision prohibiting Indians from buying unstamped cigarettes out of state, and bringing them into Washington.

RCW 82.24.020 levies a tax upon the "sale, use, consumption, handling, possession, or distribution" of all cigarettes. WAC 458–20–186 provides that the cigarette tax is due and payable by the first person who sells, uses, consumes, handles, possesses, or distributes the cigarettes in this state. To enforce collection of the tax levied, tax stamps are printed by the Department of Revenue, and are to be affixed to the "smallest container or package" of cigarettes that will be handled or sold. R.C.W. 82.24.030. RCW 82.24.080 provides in pertinent part:

> It is ... the intent and purpose of this chapter that the tax shall be imposed at the time and place of the first taxable event occurring within this state: ...

The Washington Administrative Code provides that "every [Washington] licensed stamping wholesaler" must stamp the "cigarettes that require stamping within 72 hours after receipt, but in any event, on or before transfer or sale to another party" and that anyone else must file with the Department of Revenue a notice of intent to possess unstamped cigarettes in the State of Washington and must bring the unstamped cigarettes to the Department of Revenue "for payment of the tax within 72 hours of receipt, but in any event, on or before sale or transfer to another party." WAC 458–20–186.

RCW 82.24.040 and 82.24.050 set forth the duties of Washington cigarette wholesalers and retailers regarding cigarette tax stamps. These statutes clearly provide exceptions to the general rule regarding Indians, and are at odds with the Government's contention that only licensed Washington wholesalers are authorized to affix tax stamps to cigarettes, and must do so to all cigarettes regardless of their ultimate destination and disposition.

RCW 82.24.040 provides that no wholesaler in this state may possess, within this state, unstamped cigarettes except that:

> (2) Any wholesaler in the state who is licensed under Washington state law ... **shall be permitted to set aside, without affixing the stamps required by this chapter, such part of his stock as may be necessary for the conduct of his business in making sales ... to the established governing bodies of any Indian tribe.**

RCW 82.24.050 sets forth the duties of cigarette retailers, and can only be read as presupposing that the Washington retailers may be obtaining cigarettes from distributors who are not licensed Washington wholesalers. Only Washington wholesalers would have been required to affix the tax stamps before selling them to a retailer. The wholesalers in this case were not located in the State of Washington. RCW 82.24.050 also recognizes the Indian's right to possess unstamped cigarettes:

> No retailer in this state may possess unstamped cigarettes within this state unless the retailer is licensed under Washington state law and, within a period of time after receipt of any of the articles taxed herein as is reasonably necessary for the purpose, causes the same to have the requisite denomination and amount of stamps affixed to represent the tax imposed herein: *Provided,* that those articles **to which stamps have been properly affixed by a wholesaler or another retailer,** licensed under Washington state law, **may be retained by any retailer,** and that those articles intended for sale to qualified purchasers **may,** under rules adopted by the department of revenue, **be retained by**

... **Indian tribal organizations, without affixing the stamps required by this chapter.**

Thus, RCW 82.24.040 provides that every Washington licensed wholesaler, who complies with Department of Revenue record-keeping duties, is permitted to set aside a portion of his stock without affixing tax stamps for sale to an Indian tribal organization. Likewise, RCW 82.24.050 imposes on every licensed retailer the duty to affix the required denomination of stamps, except where the sale is to an Indian tribal organization. It is not disputed that the Indian smoke shops in this case are Indian tribal organizations.

The Government recognizes that RCW 82.24.040 and .050 provide exceptions to the stamping requirement for Indians, but argues that W.A.C. 458–20–192 somehow supersedes these provisions. The court finds otherwise. WAC 458–20–192 provides that sales of cigarettes by Indians to non-Indians are subject to state cigarette tax, which is not at issue in this case. "[S]ince the tax is levied upon the non-Indian purchaser and the vendor is obligated to make precollection of the tax," the regulation requires Indian vendors making or intending to make such sales to non-Indians to purchase a stock of cigarettes with the Washington State cigarette tax stamps already affixed, even though the Indians themselves are exempt from the state tax. WAC 458–20–192 further provides:

> "However, Indians and Indian tribes may make purchases of unstamped cigarettes from licensed cigarette distributors for resale to qualified purchasers ... "Qualified purchaser" means (1) an Indian purchasing for resale within the reservation to other Indians, and (2) an Indian purchasing solely for his or her own use other than for resale."

Likewise, R.C.W. 82.24.110(1) specifically excludes those persons permitted to possess unstamped cigarettes (tribal Indians) from the state misdemeanor provision: It provides that it is a misdemeanor:

> for any retailer, **except one permitted to maintain an unstamped stock** to engage in interstate business ... to have in pos-

session in any place of business any of the articles herein taxed, unless the same have the proper stamps attached.

Thus, these Defendants, are specifically excluded from this misdemeanor statute as enrolled members of an Indian tribe, who are permitted under Washington law to possess a stock of unstamped cigarettes.

The Washington statutes and regulations clearly indicate an awareness that, although the State can regulate the on-reservation sale of cigarettes to non-Indians, the Indians themselves are exempt from the state cigarette tax, and thus, are allowed to possess cigarettes not bearing tax stamps for their own use or for sale to other Indians. There is nothing in the Washington statutes or regulations that prohibits an Indian from purchasing unstamped cigarettes in Washington or out of state for resale to "qualified purchasers" as defined in W.A.C. 458–20–192, **supra.**

Washington courts have recognized this Indian exception. In a case involving Defendant Terry Tonasket's Grandfather, *Tonasket v. State of Washington,* 84 Wash.2d 164, 525 P.2d 744 (1974) the Washington Supreme Court made it clear that Washington law as of that date allowed Mr. Tonasket to possess unstamped cigarettes:

Since Mr. Tonasket was purchasing cigarettes from an Oregon distributor for resale to reservation Indians as well as to non-Indians, it would appear logical to conclude that the **first taxable event would be the resale of the cigarettes to a non-Indian at which time Mr. Tonasket could be required to affix the tax stamp and collect the amount of the tax from the non-Indian customer** ...

*Id.* at 181, 525 P.2d 744 (emphasis added). "In February, 1967, Mr. Tonasket was entitled to have unstamped cigarettes in his possession for resale to reservation Indians." *Id.* at 182, 525 P.2d 744.

The Washington legislature has subsequently revised its laws regarding cigarette taxes; however, the law as it exists in September 1994 still provides that tribal Indians are entitled to have unstamped cigarettes in their possession for consumption by and resale to reservation Indians. The court in *Gord v. Department of Revenue,* 50 Wash. App. 646, 654, 749 P.2d 678 (1987) stated:

Notwithstanding whether Mr. Baker qualifies as a wholesaler, Mr. Baker would be excepted from affixing stamps to cigarettes under R.C.W. 82.24.040 (duties of a wholesaler) or R.C.W. 82.24.050 (duties of a retailer) if the record revealed that the cigarettes he possessed were for sales to "established governing bodies" of an Indian tribe.

*Id.* at 654, 749 P.2d 678.

The United States Supreme Court in *Washington v. Confederated Tribes of the Colville Tribes of the Colville Indian Reservation,* 447 U.S. 134, 100 S.Ct. 2069, 65 L.Ed.2d 10 (1980) addressed the issue of Washington's cigarette tax as it applied to members of the Colville Indian Tribe. The Court recognized that the Washington cigarette tax was imposed upon the first taxable event, and noted that "[w]here the wholesaler or retailer is an Indian on whom the tax cannot be imposed ... the first taxable event is the use, consumption or possession by the non-Indian purchaser." *Id.* at 142, n. 9, 100 S.Ct. at 2075, n. 9 (internal citation omitted).

The Court continues to recognize the critical distinction between a state's right to tax cigarettes sold on a reservation to non-Indian purchasers, and the Indians' right to possess unstamped, untaxed cigarettes. In *Milhelm Attea, supra,* the Court stated:

This is another case in which we must reconcile the plenary power of the State over residents within their borders with the semi-autonomous status of Indians living on tribal reservations....

The specific kind of state tax obligation that New York's regulations are designed to enforce—which falls on non-Indian purchasers of goods that are merely retailed on a reservation—stands on a markedly different footing from a tax imposed directly on Indian traders, or enrolled tribal members or tribal organizations.

*Id.,* —— U.S. at ——, 114 S.Ct. at 2035. The Court further noted, regarding New York's regulation setting a quota on untaxed cigarettes, that:

[t]he sole purpose and justification for the quotas on untaxed cigarettes is the State's legitimate interest in avoiding tax evasion by non-Indian consumers. By imposing a quota on tax-free cigarettes, New York has not sought to dictate "the kind and quantity of goods and the prices at which goods will be sold to the Indians." Indian traders remain free to sell Indian tribes and retailers as many cigarettes as they wish, of any kind, and at whatever price. If the Department's "probable demand" calculations are adequate, tax-immune Indians will not have to pay New York cigarette taxes and neither wholesalers nor retailers will have to precollect taxes on cigarettes destined for their consumption.

*Id.* at ——, 114 S.Ct. at 2036 (citations omitted). The Supreme Court has never held that a state can prohibit tribal Indians from obtaining, transporting, and possessing unstamped, untaxed cigarettes. Furthermore, the State of Washington has not done so. There is nothing in the Washington statutes or regulations that prohibits an Indian from purchasing unstamped cigarettes in Washington or out of state for resale to "qualified purchasers" as defined in WAC 458–20–192, supra.

### THE CONTRABAND CIGARETTE TRAFFICKING ACT

■ The Contraband Cigarette Trafficking Act (CCTA) was passed in response to congressional findings of widespread traffic and sales of cigarettes, in violation of state tax laws, and a causal relationship between this illegal activity and the rise of criminal racketeering. Accordingly, Congress sought to provide federal assistance to the states in their efforts to stop cigarette smuggling. H.R.Conf.Rep. No. 1778, 95th Cong., 2d Sess. 1, 7, *reprinted in* 1978 U.S.Code Cong. & Admin. News at 5518, 5535–5536. Clearly, a violation of the CCTA requires a violation of state law as a predicate offense.

It is undisputed that Washington State has a cigarette tax, and that the State requires a stamp to be placed on cigarette packages to evidence payment of that tax. It also is undisputed that enrolled members of Indian tribes are exempt from paying the State's cigarette tax. The question is whether a tribal Indian can be guilty of violating 18 U.S.C. § 2342 by obtaining unstamped cigarettes in Montana, transporting them from Montana to Washington, and possessing them in the State of Washington. In other words, the inquiry is whether an enrolled tribal Indian who transports and possesses cigarettes from another state that bear no evidence of the payment of Washington State cigarette taxes in the State of Washington, violates Washington law, thereby triggering applicability of the CCTA.

The court finds that neither Washington statutes and regulations, nor binding court precedent specifically prohibit an enrolled tribal Indian from purchasing unstamped cigarettes out of state, transporting them across state lines into Washington, and possessing them in the State of Washington. Any Washington tax on those cigarettes becomes due only if the cigarettes are transferred to a non-Indian consumer.

Additionally, there is merit to Defendants' argument that Congress did not intend the Contraband Cigarette Trafficking Act to apply to Indians. The legislative history of the Act suggests that Congress did not intend it to interfere with Indian rights in any way, and believed that it was accomplishing this goal with the "applicable state cigarette tax" language in Section 2342.

Some concern was expressed in the course of the conference that the definition of 'contraband cigarettes' inadvertently extinguished rights of certain Indians and Indian tribes under current law to engage in the commercial sale of cigarettes within Indian country free from state taxation. The phrase **'applicable state cigarette taxes'** makes it clear that this legislation is not intended to affect transportation or sale by Indian or Indian tribes acting in accordance with legally established rights. The conferees do not intend that this bill address the current exemption from state taxation of cigarette sales on Indian reservations and nothing in this bill is intended to affect this or any other immunity from state tax held by any Indian or Indian tribe.

H.R.Conf. No. 1778, 95th Cong., 2d Sess. 9, *reprinted* in 1978 U.S.Code Cong. & Admin.News at 5538.

For all the foregoing reasons, the court finds that the facts alleged in the Indictments are not a violation of Washington law, and, therefore, do not establish the predicate offense necessary for a violation of the federal criminal CCTA.

The court's finding that Washington law does not prohibit the alleged acts of these Defendants means that no federal criminal offense has been stated in the Indictments. Assuming the facts as alleged in the Indictments to be true, that these Defendants obtained unstamped cigarettes out of state, transported them into Washington and possessed them in Washington, the Defendants did not possess cigarettes bearing no evidence of **applicable** state cigarette taxes in **a state requiring a stamp to evidence payment of cigarette tax,** because, as enrolled tribal Indians, Washington does not require a stamp as evidence of tax on cigarettes possessed by them; and they cannot be guilty of a violation of the federal criminal Contraband Cigarette Trafficking Act for committing the acts alleged in the Indictments.

However, Defendants' argument that no state cigarette tax is ever applicable to Indians' rights to buy, possess, and sell non-taxed unstamped cigarettes must fail.

### STATE CIGARETTE TAXES AND INDIANS

Defendants contend that no state cigarette tax is ever **applicable** to enrolled tribal Indians, and that, therefore, there is no requirement ever that cigarettes in an Indian's possession bear a stamp **to evidence payment of the tax.** The Government argues that the Washington State Department of Revenue requires a Washington State tax stamp to be placed on all cigarettes possessed in Washington, including those possessed by enrolled tribal Indians, although the Indians are not required to pay the State tax, and can apply for a refund of the state tax paid. It is the Government's position that a Washington licensed wholesaler must place tax stamps on all cigarettes before distributing them to whatever source, and that cigarette retailers,

including enrolled tribal Indian retailers, can only obtain cigarettes from licensed Washington wholesalers, and can receive only cigarettes bearing tax stamps. The court finds the Government's argument lacks merit, as discussed above. However, Defendants' position that the state cannot regulate in any way the Indians' rights to possess unstamped cigarettes is also without merit.

The Supreme Court has not yet dealt with the criminal Contraband Cigarette Trafficking Act. However, it has dealt with the delicate issue of state cigarette taxes, and Indian consumers and sellers of cigarettes on several occasions, including the very recent Supreme Court case of *Department of Taxation and Finance of New York v. Milhelm Attea & Bros., Inc.,* —— U.S. ——, 114 S.Ct. 2028, 129 L.Ed.2d 52 (1994).

Beginning with *Moe v. Confederated Salish and Kootenai Tribes of Flathead Reservation,* 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976), the Court has steadfastly held that, although a state lacks the authority to tax cigarettes sold to tribal members for their own consumption, and that cigarettes to be consumed on the reservation by enrolled tribal members are tax exempt, and therefore need not be stamped, the state can require an Indian tribal seller of cigarettes to collect the state cigarette tax from non-Indian purchasers, and can otherwise regulate the sale of cigarettes on Indian reservations.

The Court in *Washington v. Confederated Tribes of the Colville Indian Reservation,* 447 U.S. 134, 100 S.Ct. 2069, 65 L.Ed.2d 10 (1980) dealt specifically with Washington's cigarette taxes, and tribal Indians. The Court held that (1) the State can impose its tax on non-Indian purchasers of cigarettes sold by Indians, despite the fact that the tribe also imposes a tax on the cigarettes; (2) the State's record-keeping requirements regarding the Indian's tax exempt and nonexempt sales of cigarettes are valid; and (3) the State's interest in taxing Indian purchasers of cigarettes, who are not enrolled in the governing tribe outweighs any tribal interest that may exist in preventing the State from imposing such taxes. Finally, the Court addressed the issue of shipments of cigarettes

traveling to a reservation in Washington from out-of-state wholesalers, which is very closely connected to the issue here: whether cigarettes obtained by an Indian from out-of-state distributors, and then transported, and possessed in Washington by that Indian purchaser, are required to bear a Washington State tax stamp prior to any retail sale.

The Court in *Colville* held that **"although the cigarettes in transit are as yet exempt from state taxation,** they are not immune from seizure when the Tribes ... have refused to fulfill collection and remittance obligations which the State has validly imposed." 447 U.S. at 161–62, 100 S.Ct. at 2085 (emphasis added). Thus, the Court approved the civil remedies available to the State for noncompliance with the State's tax laws, while recognizing the Indians' right to possess untaxed cigarettes. The Court carefully distinguished that particular case as not involving on-reservation seizures, and found it unnecessary to resolve whether a state can enter onto a reservation to seize unstamped cigarettes intended for sale to non-tribal members. To date, the Court has not answered that question, and the State of Washington has previously stopped short of going onto the reservations to seize unstamped cigarettes, which is what the ATF agents did in these cases, as discussed **infra.**

More recently, the Court has reaffirmed and expanded the states' authority to regulate sales of cigarettes from Indian smoke shops to non-Indian purchasers, including regulations limiting the quantity of unstamped, untaxed cigarettes available to the Indians, based on probable demand. *Oklahoma Tax Comm'n v. Potawatomi Tribe of Oklahoma,* 498 U.S. 505, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991); *Milhelm Attea, supra,* —— U.S. ——, 114 S.Ct. 2028. However, in so doing, the Supreme Court continues to recognize the critical distinction between a state's right to tax cigarettes sold on a reservation to non-Indian purchasers and the Indians' right to possess unstamped, untaxed cigarettes meant for Indian consumption.

Washington law concerning cigarette taxes and Indians contains a nearly identical quantity control provision to that of New York upheld in *Milhelm Attea,* which, of course, was not a criminal case under the CCTA. WAC 458–20–192 provides that the resale of the tax exempt cigarettes may be made "only in such quantities as is approved in advance by the Department of Revenue." Therefore, Washington can and does control the quantity of unstamped cigarettes Indians may acquire from Washington distributors.

However, it is clear that Washington recognizes that it lacks the authority to tax cigarettes sold to tribal members for their own consumption, or cigarettes possessed by an Indian for sale to other tribal Indians. It is only when the cigarettes are sold to a non-tribal member that the cigarettes become taxable, as repeatedly emphasized by the Supreme Court. To ensure that non-exempt, non-Indian purchasers do not likewise escape taxation, the Washington regulations limit the quantity of untaxed cigarettes that Washington wholesalers may sell to tribes and tribal retailers on a probable demand basis. On-reservation cigarette sales to persons other than reservation Indians are legitimately subject to state taxation. Additionally, Indian cigarette vendors are not immune from state regulations regulating the quantity of, and the record-keeping requirements of, unstamped cigarettes they purchase in Washington. *Milhelm Attea, supra.*

Therefore, Defendants' argument that Washington State law regulating the sale of cigarettes by tribal Indians is somehow preempted by the Indians' federal immunity from state taxation must fail. This court does not hold that the State of Washington is unauthorized to regulate the on-reservation sales of cigarettes. To the contrary, it is clear that the applicable statutes and regulations in Washington fall within the parameters of the Supreme Court decisions. Washington validly imposes its cigarette taxes on any on-reservation sale to a non tribal member, and requires the tribal retailers to prepay the tax when they purchase cigarettes from a Washington distributor. However, an Indian retailer may also purchase unstamped cigarettes from a Washington distributor. When an Indian retailer purchases unstamped cigarettes for sale to other Indians from a Washington wholesaler, the State controls the quantity of authorized unstamped

cigarettes available to Indians, using a "probable demand" quota system. Additionally, an Indian retailer of cigarettes in Washington is required to collect the State cigarette tax from non-Indian purchasers, and to keep detailed sales records of exempt and non-exempt sales. However, an Indian retailer is not prohibited from obtaining unstamped cigarettes in or out of state.

The State of Washington is not without remedies if Indian tribal members are not in compliance with the State law. An Indian tribe's sovereign immunity prevents the State from suing the Tribe for the collection of unpaid State cigarette taxes. *Potawatomi, supra.* However, the State has alternative remedies. Individual members, agents, or officers of a tribe may be liable for damages brought by the State for unpaid taxes. The State may also collect the tax from Washington cigarette wholesalers, may seize unauthorized, unstamped cigarettes headed from a Washington distributor to a reservation, or may assess a Washington distributor who supplies unauthorized unstamped cigarettes to a tribal retailer for the unpaid taxes. *Id.* Washington law provides that "[a]ny delivery, or attempted delivery, of unstamped cigarettes to an Indian or tribal vendor without advance approval by the department will result in the treatment of those cigarettes as 'contraband' subject to seizure, and in addition, the person making ... such delivery will be held liable for payment of the cigarette tax and penalties." WAC 458–20–192. This is to be distinguished from the definition of "contraband" under the federal criminal CCTA.

Additionally, RCW 82.24.040 provides that the Department of Revenue may "revoke this permission to maintain a stock of unstamped goods for sale to a specific Indian tribal organization when it appears that sales of unstamped cigarettes to persons who are not enrolled members of a recognized Indian tribe are taking place, or have taken place ..." RCW 82.24.120 provides that a person who is found to have failed to affix the required stamps, or to have them affixed as required by law can be assessed, in addition to any tax due, the greater of $10.00 per package of unstamped cigarettes, or $250.00 plus interest.

It is not disputed that the Indictments in this case are based only on the contention that these Defendants obtained unstamped cigarettes from Montana distributors, transported the cigarettes across state lines into Washington, and possessed the cigarettes in Washington. This court has found that the Indictments in these cases do not state an offense, because Washington law does not prohibit an Indian from purchasing unstamped cigarettes from out-of-state distributors, transporting those cigarettes across state lines into Washington, and possessing them in Washington. Accordingly, **IT IS HEREBY ORDERED** that the Clerk shall **DISMISS THE INDICTMENTS** against Kurt Brigman, Terry Tonasket, John Cook and Joanne Cook **WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that the jury trial set to commence on September 19, 1994 in these cases is **HEREBY VACATED.**

Nevertheless, the Washington statutes and regulations clearly indicate an awareness that, although the Indians are exempt from the state cigarette tax, and, thus, are allowed to possess cigarettes not bearing tax stamps for their own use, or for sale to other Indians, the State can and does regulate the on-reservation sale of cigarettes to non-Indians. This court finds that Washington's regulations regarding the taxation of cigarettes as applied to Indians are reasonable, and that the civil and regulatory remedies set forth in state law are available to the State if the Indians do not abide by those regulations.

## MOTION TO DISMISS

The Motion to Dismiss the Indictments against these Defendants is brought pursuant to Fed.R.Crim.P. 12(b)(2) for failure to state a federal offense. Rule 12(b) provides that "any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion." This includes a motion challenging that the indictment does not state an offense pursuant to Rule 12(b)(2).

■ Rule 12(b) of the Federal Rules of Criminal Procedure permits consideration of

any defense "which is capable of determination without the trial of the general issue." A motion to dismiss is generally "capable of determination" before trial "if it involves questions of law rather than fact." *United States v. Nukida,* 8 F.3d 665, 669 (9th Cir. 1993); *United States v. Shortt Accountancy Corp.,* 785 F.2d 1448, 1452 (9th Cir.), *cert. denied,* 478 U.S. 1007, 106 S.Ct. 3301, 92 L.Ed.2d 715 (1986). If the pretrial claim is substantially founded upon and intertwined with evidence concerning the alleged offense, the motion falls within the province of the ultimate finder of fact, and must be deferred. *Nukida, supra; United States v. Buckley,* 689 F.2d 893 (9th Cir.1982). *cert. denied,* 460 U.S. 1086, 103 S.Ct. 1778, 76 L.Ed.2d 349 (1983). If, however, the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense raised, the defense issue is properly resolved before trial. *Nukida, supra* 8 F.3d at 669.

■ Whether Indians are prohibited under Washington law from receiving, transporting, and possessing unstamped cigarettes is clearly a question of law, totally distinguishable from the facts alleged in the Indictments. Whether these Defendants, in fact, did obtain unstamped cigarettes out of state, transport them into Washington, and possess them in Washington is not determinative of whether they are prohibited from doing so. Therefore, the court finds that the issue of whether the Indictments state an offense by these Defendants is appropriate for pre-trial resolution.

## MOTION TO SUPPRESS EVIDENCE AND RETURN PROCEEDS

■ Because the court has found that the Indictments must be dismissed for failure to state a federal criminal offense, the Motion to Suppress Evidence would appear to be moot. However, because the Washington Department of Revenue is in possession of the proceeds of the sale of cigarettes seized in the subject searches, and has been directed by court Order to retain those proceeds until further Order of the court, this court finds it appropriate to also resolve the suppression issue.

■ Defendants contend that the search warrants authorizing the searches of the Indian smoke shops were overly broad, and that the supporting affidavit was invalid because it incorrectly stated Washington law regarding the right of Indians to possess unstamped, untaxed cigarettes. This court agrees.

■ The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects." *U.S. Const. Amend. IV.* No warrants may issue except those which particularly describe the persons and things to be seized. *Id.* "Fear of general warrants and of indiscriminate rummaging among personal belongings motivated the adoption of the Fourth Amendment." *United States v. Whitten,* 706 F.2d 1000, 1008 (9th Cir.1983) (citing *Payton v. New York,* 445 U.S. 573, 583, 100 S.Ct. 1371, 1378, 63 L.Ed.2d 639 (1980)). "Only a warrant particularly describing the place to be searched and the persons or things to be seized is valid." *United States v. McLaughlin,* 851 F.2d 283, 285 (9th Cir.1988).

It is not disputed that the warrants here are sufficiently specific as to the places to be searched. Rather, the Defendants contend that the search warrants authorizing the searches were impermissibly broad, in that they did not differentiate between contraband and legally possessed unstamped cigarettes.

The warrants here authorize, **inter alia,** the seizure of "cigarettes or tobacco products constituting contraband under State law and all packaging." The affidavit sets forth the Agent's expertise and experience in contraband cigarette investigations, and the circumstances leading the affiant to believe that evidence of contraband cigarettes would be found on the premises of the smoke shops. The affidavit is incorporated by reference into the search warrant.

The affidavit further sets forth the officer's version of what the Washington State law is regarding contraband cigarettes. It is not totally accurate. The affidavit states:

> Under Washington State law **allocated cigarettes supplied to Indian tribe are stamped with the authorized official**

Washington State tax stamp and are considered stamped untaxed allocated cigarettes. This allocation works as follows:

Each tribal reservation receives an annual allocation limiting the quantity of cigarettes that can be purchased untaxed. The allocation is based on Tribal Service Area population and national average annual cigarette consumption rates.

Cigarettes may only be purchased from Washington licensed wholesalers. All cigarettes sold to customers in Washington are required to be stamped whether they are intended to be taxed or exempt.

Wholesalers must obtain approval from the Department of Revenue prior to each shipment. Approval is granted only up to allocation levels.

The wholesaler ships stamped cigarettes after receiving approval and is allowed a refund by the Department of Revenue for these tax exempt sales.

The allocation system has been circumvented by certain smoke shop operators who purchase untaxed cigarettes out of state and smuggle them across the border. Compliance checks by the Washington Department of Revenue have repeatedly found unstamped cigarettes for sale in a number of smoke shops, demonstrating that the system is being circumvented.

The warrants authorize the search and seizure of "contraband cigarettes under state law." The affidavit gives the impression that under Washington law all unstamped cigarettes found in an Indian smoke shop are "contraband", which is a misleading representation of the applicable law, as discussed supra. The Department of Revenue may have instituted a policy of stamping the allocated tax-exempt cigarettes for Indian consumption, along with the taxed cigarettes, but there is no such provision in Washington law. Washington law requires Washington cigarette wholesalers, retailers, and others to affix tax stamps on cigarettes for sale to non-Indians. They have a reasonable time (72 hours) after receipt to do so. WAC 458–20–186.

However, Washington statutes and regulations are replete with provisions that cigarettes in the possession of a tribal Indian for Indian consumption are not required to bear the tax stamps. WAC 458–20–192 clearly provides that Indians may purchase unstamped cigarettes for resale to "qualified purchasers." Therefore, if some of the unstamped cigarettes seized in these searches were intended for Indian consumption, or were received within the past 72 hours, and not yet transferred to a non-Indian consumer, no tax stamps were required to evidence payment of tax.

■ The Fourth Amendment prohibits general searches. Nothing may be left to the discretion of the officer executing the warrant. "Under the Fourth Amendment, a warrant must particularly describe the items to be seized, and nothing may be left to the discretion of the executing officer." *United States v. Crozier*, 777 F.2d 1376, 1381 (1985).

■ "The specificity required in a warrant varies depending on the circumstances of the case and the type of items involved." *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir.1986). So long as officers can distinguish between legally and illegally possessed property on the basis of objective, articulated standards, a search warrant based on probable cause may direct inspection of premises containing a generic class of items, a portion of which are believed to be contraband. *United States v. Pollock*, 726 F.2d 1456, 1466 (9th Cir.1984). If such standards reasonably guide the officers in avoiding the seizure of protected property, a search warrant authorizing such seizure is not a general warrant. *Id.* However, a search is unlawfully general where the warrant contains no guidelines distinguishing between property which was contraband and that which was not. *United States v. Cardwell*, 680 F.2d 75 (9th Cir. 1982); *United States v. Drebin*, 557 F.2d 1316 (9th Cir.1977) *cert. denied*, 436 U.S. 904, 98 S.Ct. 2232, 56 L.Ed.2d 401 (1978).

In determining whether a description is sufficiently precise, the Ninth Circuit has looked at the following factors: (1) whether probable cause exists to seize all items of a particular type described in the warrant, (2) whether the warrant sets out objective stan-

dards by which executing officers can differentiate items to be subject to seizure from those which are not, and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued. *Spilotro, supra* 800 F.2d at 963.

Here, there was probable cause to believe that these Defendants had possession of unstamped cigarettes obtained in Montana. However, there was no probable cause to seize all unstamped cigarettes found in the Indian smoke shops. Neither the warrant nor the affidavit set forth objective standards by which the officers could differentiate cigarettes that should have been stamped from those that required no such stamp. Finally, the government agents would not have been able to describe the items more particularly in light of the fact that the only information available to them regarding the applicable law was undoubtedly what was erroneously described in the affidavit.

The search warrants and supporting affidavit in these cases are identical except for the name and location of the property to be searched. The warrants authorize the search for, and seizure of "contraband cigarettes under state law." The supporting affidavit implies that under Washington law, all unstamped cigarettes in the possession of anyone, including Indians, at any time, in the State of Washington are contraband. This statement is an incorrect statement of the law as it relates to Indians, as discussed **supra.**

The affidavit of Gary O'Neil, Assistant Director for Special Programs for the Washington State Department of Revenue states:

Until recently untaxed cigarettes which were allowed for delivery to the reservations pursuant to the Department's allocation system bore no tax stamps. However, it has not been possible for the Department of Revenue, in monitoring cigarette stocks in retail outlets through visual observation, to determine which unstamped cigarettes were obtained through the allocation process and which were acquired without advance notice. The Department of Revenue has therefore required all cigarettes untaxed and taxed to bear the state

excise tax stamp. Indian retailers are not required to pay the tax represented by the stamp with respect to purchases made through the allocation system.

The court can sympathize with the difficulty facing the Washington Department of Revenue in enforcing the State cigarette tax laws regarding Indian smoke shop sales or any other sales. However, notwithstanding the unwritten policy of the Department of Revenue, there is no authority either in the RCW or WAC forbidding Indians from possessing unstamped cigarettes. Rather, the statutes and regulations clearly provide that tribal Indians can purchase, possess, consume, and sell unstamped cigarettes to other Indians. Nevertheless, as stated **supra,** the State of Washington has ample civil and regulatory authority by which it can enforce the collection of taxes on cigarette sales by Indians to non-Indians.

These Defendants are enrolled members of a recognized Indian tribe, who own and/or operate smoke shops located on the Colville Indian reservation, which were searched by ATF agents on November 22, 1991. It is undisputed that the Defendants are licensed by the tribal government to sell cigarettes.

On November 22, 1991, Magistrate Judge Imbrogno issued search warrants to search the Defendants' smoke shops. The warrants were among 12 identical warrants authorizing simultaneous searches. The Magistrate Judge was not informed that the premises to be searched were located on an Indian reservation, and were owned by enrolled members of an Indian tribe. More importantly, she was not correctly advised about Washington law relating to cigarette taxation and Indians. All unstamped cigarettes found in the smoke shops were seized.

ATF Agent Herb Byerly's affidavit supporting the warrant set forth the background of the investigation, clearly establishing probable cause that these Defendants obtained unstamped cigarettes in Montana, transported them to Washington, and were in possession of the unstamped cigarettes in Washington. Even if that were a federal crime, which this court has found it is not, the executing officers might have found un-

stamped cigarettes in the Indian smoke shops that were legally obtained and possessed. Therefore, the court is satisfied that the search warrants were overbroad in that they did not give officers any clue that they might find unstamped cigarettes in the Indian smoke shops that were perfectly legal.

The warrants called for the seizure of "cigarettes or tobacco products constituting contraband under state law and all packaging." The affidavit in support of the warrant set forth Washington law regarding cigarettes, but did not accurately reflect the law regarding the Indians exemption to state taxation. The affidavit also did not specify that the premises to be searched were located on an Indian reservation, or that the owners were enrolled members of an Indian tribe. Therefore, the court finds that the subject search warrants and supporting affidavit were overbroad and facially invalid. Accordingly, Defendants' Motion to Suppress Evidence. obtained as a result of the searches is **GRANTED.**

■ A great number of cigarettes were seized during the searches of the Indian smoke shops. Magistrate Judge Imbrogno subsequently signed an Order authorizing the Government to turn the cigarettes over to the Washington Department of Revenue, and directed the Department of Revenue to timely market the cigarettes and retain the proceeds until further order of the court.

Because the proceeds from the sale of the cigarettes seized as the result of an invalid search are fruit of the poisonous tree, **IT IS HEREBY ORDERED** that the Washington Department of Revenue is directed to forthwith return the proceeds of the cigarette sales to the owners of the smoke shops that were illegally searched.

**IT IS SO ORDERED.** The Clerk is directed to enter this Opinion and Order and forward copies to counsel.