[No. 7637-7-III.   Division Three.   July 2, 1987.]

ELIZABETH V. GORD, ET AL, *Appellants,* v. THE DEPARTMENT OF REVENUE, *Respondent.*

---

[5]For example, names and social security numbers could be deleted.

*Christopher R. Boutelle* and *Potter & Boutelle,* for appellants.

*Kenneth O. Eikenberry, Attorney General,* and *John M. Gray, Assistant,* for respondent.

GREEN, J.—A pickup, trailer and the contents (contraband) thereof were seized by the Washington State Department of Revenue and a judgment forfeiting the vehicles and contents was obtained. Elizabeth V. Gord, the owner of the vehicles, and Kenneth D. Baker, the lessee, appeal.

It is contended the court erred in (1) denying a motion to amend their pleadings; (2) determining they lacked standing to raise the issue of an illegal search and seizure; (3) ruling the forfeiture procedure, RCW 82.24.140, was civil in nature, rather than criminal; (4) failing to return the seized property; (5) ruling RCW 82.24, prescribing a tax on cigarettes, was applicable to Mr. Baker, an enrolled member of an Indian tribe; (6) finding RCW 82.24.140 constitutional; and (7) denying relief in that the findings of fact do not legally support the conclusions of law. We affirm.

Mr. Baker and Ms. Gord are members of the Shoalwater and Puyallup Indian Tribes, respectively. Ms. Gord operates the Thunderbird Trading Post on the Puyallup Reservation. She leased the adjoining premises to Mr. Baker who operates a wholesale cigarette business known as Smokey's Wholesale. Mr. Baker has no Washington business license and pays no state taxes. In 1983 Mr. Baker leased from Thunderbird an orange and cream colored 1982 Chevrolet crew cab pickup and 1983 KZ 40-foot trailer for the purpose of transporting cigarettes from Montana.

After months of surveillance by the Department of Revenue, the State on May 23, 1984, obtained a warrant authorizing a search of these vehicles for contraband cigarettes. Probable cause for the issuance of the warrant was based on four affidavits describing Mr. Baker's importation, sale and distribution of unstamped cigarettes. On the day of its issuance, the Department and the State Patrol, acting pursuant to the warrant, stopped Mr. Baker's leased truck and trailer near Spokane after the vehicle entered the state from Idaho. Neither Ms. Gord nor Mr. Baker were in the vehicles. The leased trailer contained 5,691 cartons of cigarettes, none of which were affixed with stamps from the Department of Revenue. The State seized and impounded the truck, trailer, and their contents.

Both Ms. Gord and Mr. Baker filed timely claims and petitions for return of the seized property or its value. The two forfeiture petitions were consolidated. Prior to trial Ms. Gord and Mr. Baker moved to amend their petitions to specify that their rights under the fourth amendment to the United States Constitution and under article 1, section 7 of the Washington State Constitution had been violated. That motion was denied; trial was held on July 25, 1985. The court determined Ms. Gord and Mr. Baker lacked standing to challenge the search warrant as well as the search and seizure because neither was present and neither had a possessory interest in the vehicles at the time of the seizure. The court ruled a forfeiture proceeding is civil in nature and, therefore, probable cause in the criminal law sense

need not be established. Further, the court held that Mr. Baker's status as a member of an Indian tribe did not exempt him from compliance with RCW 82.24, the cigarette tax laws. The seized truck, trailer and cigarettes were thereby forfeited to the Department of Revenue.

For purposes of this appeal only, we assume the motion to amend the pleadings was granted; Mr. Baker and Ms. Gord have standing; and the forfeiture proceeding is not merely civil in nature, but possesses "quasi criminal" indicia. Accordingly, even if the probable cause standards in criminal cases apply,[1] we find sufficient grounds existed to support the issuance of the warrant. We also conclude Mr. Baker is not exempt from the provisions of RCW 82.24.

Mr. Baker and Ms. Gord argue the warrant should not have been issued since the State failed to meet the 2–prong standard used by the Washington courts to determine whether or not probable cause existed. *Aguilar v. Texas,* 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964); *Spinelli v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969); *State v. Jackson,* 102 Wn.2d 432, 688 P.2d 136 (1984).

*Aguilar* and *Spinelli* created a 2–prong standard for determining whether probable cause exists with respect to an informant's tips. The *Aguilar–Spinelli* test consists first of the "basis of knowledge" prong and, second, the "veracity" prong. The two prongs are to be treated as entirely separate, imposing requirements that must be independently satisfied in every case in order to sustain a determination of probable cause.

■ If an informant's tip fails under either or both of the two prongs of the *Aguilar–Spinelli* test, probable cause may still be established by independent police investigatory work that corroborates the tip to such an extent that it

---

[1]RCW 82.24.190 provides that a search may be authorized upon an affidavit that the Department "has good reason to believe" there is a violation of RCW 82.24. We need not reach the applicability of this statutory standard here because we find ample probable cause to issue the search warrant even under the criminal standard.

supports the missing elements of the 2–prong test. As the court in *Jackson* stated:

> The independent police investigations should point to suspicious activity, "'probative indications of criminal activity along the lines suggested by the informant". Merely verifying "innocuous details", commonly known facts or easily predictable events should not suffice to remedy a deficiency in either the basis of knowledge or veracity prong.

(Citations and italics omitted.) *Jackson,* at 438.

Ms. Gord and Mr. Baker argue that none of the activities observed by the State and Department constitute grounds for the belief that probable cause existed. It is contended they did not have personal knowledge of the facts, the informant's statements were based on hearsay with no actual proof of the informer's credibility, the affidavits lacked verified factual information, and the informant's information should be "totally suspect as being untruthful". Thus, they conclude that their rights under Const. art. 1, § 7 were violated.

In response, the Department points out it received initial information from an informant who wished to remain anonymous due to risk of personal injury. According to the Department, the informant gave accurate information on several occasions specifying where cigarettes were to be picked up. This information was verified by subpoenaed telephone records, approximate traveling time, vehicles used, and information on the maintenance of the vehicles. Affidavits of police officers and Department workers were presented to the judge who issued the warrant. The Department asserts the cumulative effect of this information establishes probable cause. Although the Department concedes the "basis of knowledge" prong was not satisfied, it argues that the Department and State Patrol corroborated each and every informant's tip over a period of several months. Thus, the independent police investigatory work corroborated the informant to such an extent that the missing elements are supplied as required by *Jackson.*

*Jackson,* at 445. Accordingly, the Department argues probable cause existed for the issuance of the search warrant; independent police corroboration cured any defects in the *Aguilar–Spinelli* 2–prong test.

We have reviewed the four affidavits in light of *Jackson* and find sufficient probable cause for the issuance of the warrant.

Mr. Daniel A. Breard, a tax officer for the Department of Revenue, in his affidavit stated that Department agents have, on numerous occasions, visited 7212 Waller Road, Tacoma, known as the Thunderbird Trading Post on the Puyallup Indian Reservation and observed "indiscriminate sales of unstamped cigarettes" to non–Indians. He and other agents, all non–Indians, purchased unstamped cartons of cigarettes; the last purchase he made was April 27, 1984. Mr. Breard claimed he was personally involved with a prior investigation of an unauthorized transport of unstamped cigarettes from the above address. He relates an instance where a vehicle was stopped for a traffic violation and the driver was transporting unstamped cigarettes from the Thunderbird without compliance with state regulations. On another occasion, a vehicle originating from the above address and carrying 2,800 cartons of unstamped cigarettes attempted to enter McChord Air Force Base without compliance with state regulations. Further, Mr. Breard states the Department received specific information from an informant, having a source of information from within Mr. Baker's organization, concerning cigarettes to be purchased in Montana and transported to the Thunderbird, the truck, trailer and license plate numbers of the vehicles involved, and the date and time of the next trip to obtain a "large supply of cigarettes" for the Memorial Day weekend. This pickup and trailer were observed traveling eastbound on I–90 east of Ritzville about 10 a.m. on May 23, 1984.

Sergeant Robert Johnson of the State Patrol stated in his affidavit that on May 17, 1984, he observed an orange and cream colored 1982 crew cab pickup and rectangular-shaped trailer backing into the warehouse. According to the

affidavit of Detective Daniel Davis of the State Patrol, he noted that in his surveillance activities the next day he observed "considerable auto and foot traffic" and the loading of cases of cigarettes into various vehicles at the 7212 Waller Road warehouse.

In his affidavit, Eugene Turbes, a revenue officer, claims to have received a number of phone calls from an individual claiming to have information regarding the "importation, sale and distribution of unstamped cigarettes" at Mr. Baker's business location. According to Mr. Turbes, the informant provided information over a period of time on the purchase of unstamped cigarettes in Arlee, Montana, and their transport back to the Puyallup Reservation. Mr. Turbes states the Department of Revenue confirmed this information. The pickup and trailer bore the same license plates and were the same color as the pickup and trailer that were seen on the morning of May 23, 1984, eastbound near Ritzville.

These affidavits contain ample probable cause to support the issuance of the search warrant and therefore we find there was no deprivation of Mr. Baker's or Ms. Gord's constitutional rights—even if those rights are applicable to a civil seizure and forfeiture.

Second, Mr. Baker contends the Department does not have the right to enforce a cigarette tax against him because he is (1) a wholesaler and (2) an enrolled member of an Indian tribe and thereby exempt from the provisions of RCW 82.24. We disagree.

RCW 82.24.020 levies a tax upon the "sale, use, consumption, handling, possession or distribution" of all cigarettes. To enforce collection of the tax levied, tax stamps are designed and printed by the Department of Revenue and are to be affixed to the "smallest container or package" that will be handled or sold, so that the Department may readily inspect whether the tax has been paid. RCW 82.24-.030.

"Wholesaler" is defined by RCW 82.24.010 to mean "every person who purchases, sells, or distributes any one

or more of the articles taxed herein to retailers for the purpose of resale only". Every wholesaler who furnishes a surety bond to the Department is permitted to set aside a part of his stock, without affixing stamps, for sale to an Indian tribe; such wholesaler is required to comply with a record–keeping duty of maintaining duplicate invoices with certain information and transmitting these invoices to the Department in Olympia within certain time restraints. RCW 82.24.040. RCW 82.24.040 also imposes on every wholesaler the duty to affix the requisite denomination of stamps to cigarettes that are otherwise received for distribution. Likewise, RCW 82.24.050 imposes upon every retailer the duty to affix the requisite denomination of stamps, except where the sale is to Indian tribal organizations.

WAC 458–20–192 implements these statutes and provides that sales of cigarettes by Indians to non–Indians are subject to state cigarette tax. Since the tax is levied upon the non–Indian purchaser, the regulation requires Indian vendors making or intending to make such sales to non–Indian customers to "purchase a stock of cigarettes with Washington state cigarette tax stamps affixed . . ." WAC 458–20–192. No distinction is made here between retail and wholesale sales.[2]

Enrolled members of an Indian tribe may purchase unstamped cigarettes from licensed distributors for resale solely to (1) an Indian purchasing for resale within the reservation to other Indians, or (2) for an Indian purchasing solely for his own use. However, in order to meet regulation requirements, delivery or sale of unstamped cigarettes to Indian vendors for further resale may be made "only in such quantities as is approved in advance by the department of revenue." WAC 458–20–192.

■ The collection of the cigarette tax as applied to purchases by non–Indians was upheld in *Moe v. Confederated*

---

[2] In addressing retail sales tax, the administrative code requires only Indian tribal "retailers" to collect and remit the sales tax.

*Salish & Kootenai Tribes,* 425 U.S. 463, 48 L. Ed. 2d 96, 96 S. Ct. 1634 (1976) as a "minimal burden" designed to aid the state in collecting otherwise valid taxes. As stated in *Washington v. Confederated Tribes,* 447 U.S. 134, 156, 65 L. Ed. 2d 10, 100 S. Ct. 2069 (1980):

> [This] reflects an intent that the State not tax reservation lands or income derived therefrom, but the present taxes are assessed against nonmembers of the Tribes and concern transactions in personalty with no substantial connection to reservation lands. . . . [W]e do not infer . . . that Congress has delegated the far-reaching authority to pre-empt valid state sales and cigarette taxes *otherwise collectible from nonmembers of the Tribe.*

(Italics ours.)

Mr. Baker contends the Department does not have the legal right to enforce its cigarette tax against him as he meets the RCW 82.24.010 requirements of a wholesaler. In the alternative, he argues that he has complied to the best of his ability with the statute. Mr. Baker also argues he has complied with WAC 458–20–192 inasmuch as his sales were to enrolled Indian members on reservation land. He alleges that the requirement of obtaining state permission in advance of delivery or sale and delivery is discriminatory and violates his constitutional rights, although he does not specify which constitutional right or cite any authority. Mr. Baker's argument that the Department is without authority to enforce its cigarette tax is contrary to the court's reasoning in *Confederated Tribes.* Although Mr. Baker claims he has complied with WAC 458–20–192 which requires Indian vendors (with no distinction being made between retailers and wholesalers) to seek the advance approval of the Department, the record does not support his claim.

Notwithstanding whether Mr. Baker qualifies as a wholesaler, Mr. Baker would be excepted from affixing stamps to cigarettes under RCW 82.24.040 (duties of a wholesaler) or RCW 82.24.050 (duties of a retailer) if the record revealed that the cigarettes he possessed were for sales to "established governing bodies" of an Indian tribe. Here, the

record establishes that Mr. Baker is not exactly sure where or to whom he sells cigarettes. He has sold cigarettes to at least one off–reservation smoke shop, and several shops where he did not know either the name of the person running the shop, or whether purchases were indeed by enrolled members of the tribes. The record also indicates Mr. Baker repeatedly sold cigarettes not only to Ms. Gord but also to Indian members of different tribes. In light of *Confederated Tribes* which establishes that Washington has the right to impose minimal burdens on Indian tribes, and in light of WAC 458–20–192, Mr. Baker has not complied with the statutory requirements and the administrative code requirements of selling cigarettes.

We have reviewed Mr. Baker's and Ms. Gord's challenge to the constitutionality of RCW 82.24.140 as well as their claim the findings do not support the court's conclusions and find these contentions to be without merit.

For the foregoing reasons, we affirm.

McINTURFF, C.J., and THOMPSON, J., concur.

Review denied by Supreme Court November 3, 1987.