[No. 31052-0-II. Division Two. December 21, 2004.]

ALEX J. BERCIER, *Appellant*, v. FRED KIGA, *as Director of the Department of Revenue*, ET AL., *Respondents*.

*Robert E. Kovacevich* (of *Kovacevich Law Office*), for appellant.

*Christine O. Gregoire, Attorney General*, and *David M. Hankins* and *Heidi A. Irvin, Assistants*, for respondents.

¶1 HUNT, J. — Alex Bercier appeals the trial court's dismissal of his declaratory judgment action. He argues he should be exempt from all Washington excise taxes and regulations because, as a member of the Fort Peck Indian Tribe who resides and sells tobacco products on the Puyallup Indian reservation, he is an Indian doing business

on Indian trust land, entitled to exemptions under RCW 82.24.260, .900, and 82.26.040. Holding that Bercier is not entitled to a tax exemption because he is not enrolled in the Puyallup Tribe on whose land he is doing business, we affirm.

## FACTS

¶2 Alex Bercier is an American Indian, enrolled in the Fort Peck Indian Tribe in Montana.[1] He sells tobacco products at a smokeshop on the Puyallup Tribe reservation, where he is not a tribal member.[2]

¶3 In Thurston Count Superior Court, Bercier filed a "COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTION PROHIBITING STATE TAXATION OF AMERICAN INDIANS DOING BUSINESS ON PUYALLUP RESERVATION; FOR RELIEF FROM REGISTRATION AND TAXATION BY THE STATE; TO INVALIDATE WAC 458-20-192 AND FOR CIVIL RIGHTS DAMAGES." Clerk's Papers (CP) at 5-26. He alleged that because he is an Indian licensed to do business on an Indian reservation, he should be exempt from Washington State excise taxes and related regulations. He also sought to enjoin the Puyallup Tribe from entering into an agreement with the State of Washington that could result in taxing his sales on the reservation.

¶4 Bercier further claimed that the State is discriminating against Indian smokeshops by granting a more favorable tax status to military concession cigarette sales, which are not subject to the state tax. Finally, Bercier's complaint appeared to assert three state-law claims for damages (violation of chapter 49.60 RCW, invasion of privacy, and

---

[1] The Fort Peck Indian Reservation is in northeastern Montana. The record on appeal does not reveal any plan for Bercier to change his enrollment from the Fort Peck Tribe to the Puyallup Tribe.

[2] We refer to an enrolled member of an Indian tribe who resides or is conducting business on another tribe's reservation as a "nonmember Indian." Bercier is a nonmember Indian on the Puyallup reservation.

damage to personal property) and possibly a federal-law claim for damages under 42 U.S.C. § 1983.

¶5 The State[3] moved to dismiss Bercier's action for lack of jurisdiction and for a CR 12(b)(6) failure to state a claim for which relief could be granted. In response, Bercier filed a first amended complaint and memorandum in opposition, indicating that he was dropping his claims for damages and his claim against Gary Gilbert related to Gilbert's official capacity only. Bercier also filed a motion to compel discovery from the State.

¶6 The trial court granted the State's CR 12(b)(6) motion to dismiss the majority of Bercier's claims, but it declined to dismiss one claim—that the State was violating a 1981 declaratory judgment exempting certain tribes from the requirement that they keep other tobacco product (OTP) tax records. The trial court denied Bercier's motion to compel discovery. Later, on the State's motion for reconsideration, the trial court dismissed Bercier's remaining claim, resulting in dismissal of Bercier's complaint in its entirety. Thereafter, it denied Bercier's motion for reconsideration.

¶7 Bercier appeals.

## ANALYSIS

¶8 We review dismissal of a claim under CR 12(b)(6) de novo. *Reid v. Pierce County*, 136 Wn.2d 195, 200-01, 961 P.2d 333 (1998). In reviewing a dismissal for failure to state a claim, we accept as true allegations in plaintiff's complaint and any reasonable inferences therefrom. *Reid*, 136 Wn.2d at 201. Dismissal is appropriate only if the complaint alleges no facts that would justify recovery. *Reid*, 136 Wn.2d at 200-01.

¶9 This case presents the following issues.

---

[3] For purposes of this opinion, "the State" includes Fred Kiga, Director, the State of Washington Department of Revenue; Gary Gilbert, Chief of Enforcement and Education for the Washington State Liquor Control Board; the Washington State Department of Revenue; the Washington State Liquor Control Board; and the State of Washington.

¶10 I. Do the statutory and regulatory frameworks and relevant case law for State taxation of tobacco products allow the State to tax nonmember Indians like Bercier?

¶11 II. If the answer to the first question is yes, does a consensual business relationship between a nonmember Indian and the tribe insulate the nonmember from State taxation?

¶12 III. Can a nonmember Indian preclude a compact between another tribe and the State, based on the presence of a justiciable controversy, an issue of major public concern, and/or standing to bring this action?

¶13 We address each issue in turn.

I. TAXATION OF TOBACCO PRODUCTS

¶14 Bercier's central argument is that he is entitled to exemption from Washington State's tobacco taxes because he is an Indian and he operates a smokeshop on Indian land. The relevant law, however, provides such tax exemption only for Indians who are members of the tribe on whose land they are operating. Bercier is enrolled in the Fort Peck Tribe and he is doing business on Puyallup tribal land. Therefore, he does not qualify for the State tobacco tax exemption.

A. Statutes and Administrative Code

¶15 Construction of a statute is a question of law, which we review de novo under the error of law standard.[4] Review begins with the plain language of the statute.[5] If a statute is unambiguous, we determine legislative intent

---

[4] *City of Pasco v. Pub. Employment Relations Comm'n.*, 119 Wn.2d 504, 507, 833 P.2d 381 (1992); *Inland Empire Distrib. Sys., Inc. v. Utils. & Transp. Comm'n*, 112 Wn.2d 278, 282, 770 P.2d 624 (1989).

[5] *Lacey Nursing Ctr., Inc. v. Dep't of Revenue*, 128 Wn.2d 40, 53, 905 P.2d 338 (1995).

from the language of the statute alone.[6] Similarly, if a regulation is clear and unambiguous, we apply its plain language.[7] Generally, however, we give " 'substantial weight . . . to the agency's view of the law if it falls within the agency's expertise in that special field of law.' "[8]

### 1. Cigarette and Tobacco Taxes

¶16 The State of Washington imposes an excise tax on cigarettes sold, used, consumed, handled, possessed, or distributed within Washington. RCW 82.24.020, .027(1), .028. The State collects this tax through cigarette stamps. RCW 82.24.030. The State requires wholesalers and certain retailers to keep detailed records of the purchase and sale of cigarettes. RCW 82.24.090.

¶17 The State of Washington also taxes the sale, use, consumption, handling, or distribution of all OTPs by taxing the distributor. RCW 82.26.020, .030. As with the cigarette tax, OTP distributors must keep records of their activities. RCW 82.26.060-.070.

### 2. Tax Exemptions for Indians

¶18 Federal law, 4 U.S.C. §§ 105-06, generally authorizes states to levy and to collect sales or use taxes from people in federal areas. But a state lacks the power to tax Indian tribes, Indian reservation lands, or tribal members residing on Indian reservations, unless there has been a cession of jurisdiction or there is some other federal statute permitting the tax. *County of Yakima v. Confederated Tribes & Bands of the Yakima Indian Nation*, 502 U.S. 251, 258, 112 S. Ct. 683, 116 L. Ed. 2d 687 (1992).

---

[6] *Waste Mgmt. v. Utils. & Transp. Comm'n*, 123 Wn.2d 621, 629, 869 P.2d 1034 (1994); *In re Eaton*, 110 Wn.2d 892, 898, 757 P.2d 961 (1988).

[7] *Children's Hosp. & Med. Ctr. v. Dep't of Health*, 95 Wn. App. 858, 868, 975 P.2d 567 (1999), *review denied*, 139 Wn.2d 1021 (2000).

[8] *Children's*, 95 Wn. App. at 864 (quoting *Purse Seine Vessel Owners Ass'n v. Dep't of Fish & Wildlife*, 92 Wn. App. 381, 389, 966 P.2d 928 (1998), *review denied*, 137 Wn.2d 1030 (1999)).

¶19 There has been no cession of jurisdiction or other federal statute permitting state taxation of reservation Indians for on-reservation purchases or activities. Moreover, 4 U.S.C. § 109 provides: "Nothing in sections 105 and 106 of this title shall be deemed to authorize the levy or collection of any tax on or from any Indian not otherwise taxed." Accordingly, Washington State's cigarette and OTP taxes do not apply to Indians purchasing cigarettes or selling tobacco products on the reservation of a tribe of which they are enrolled members. RCW 82.24.900; RCW 82.26.040.

¶20 Washington provides additional statutory cigarette tax exemptions for Indian and military personnel. RCW 82.24.260(1), for example, exempts:

(b) A federal instrumentality with respect to sales to authorized military personnel; or

(c) An *Indian tribal organization* with respect to sales to enrolled members of the tribe.

(Emphasis added.)[9] RCW 82.24.010(3) defines an "Indian tribal organization" as follows:

"Indian tribal organization" means a federally recognized Indian tribe, or tribal entity, and includes an Indian wholesaler or retailer that is owned by an Indian who is an enrolled tribal member conducting business under tribal license or similar tribal approval within Indian country.

These statutes delineate when "Indians" and "Indian tribal organizations" are exempt from State cigarette taxes. But the statutes do not specify whether a *nonmember* Indian operating on tribal land qualifies for these tax exemptions as would a member Indian.

¶21 The State Department of Revenue (Department) has specifically addressed this issue under the legislature's grant of authority to "prescribe forms and rules of procedure for the determination of the taxable status of any

---

[9] It is noteworthy that even if Bercier were to qualify as an "Indian tribal organization," he would be exempt from State taxes only "with respect to sales to enrolled members of the tribe." RCW 82.24.260(1)(c).

person." RCW 82.32.300. The Department promulgated WAC 458-20-192 to address State taxation of Indians. WAC 458-20-192(5) recognizes the general principle that the State may not tax Indians or Indian tribes in Indian country. WAC 458-20-192(5) defines the term "Indian" for State taxation purposes: "For the purposes of this rule, the term 'Indian' includes only those persons who are enrolled with the tribe upon whose territory the activity takes place and does not include Indians who are members of other tribes."[10] WAC 458-20-192(5).

¶22 This rule unambiguously excludes nonmember Indians from State tax exemption. In other words, nonmember Indians are subject to the State cigarette and tobacco taxes. *See* WAC 458-20-192(5).[11] Because the rule's plain meaning is clear, we need not look further to determine its meaning. And because Bercier is not enrolled in the Puyallup Tribe, on whose territory he sells cigarettes and tobacco products, he does not qualify for State tax exemption under WAC 458-20-192(5).[12]

---

[10] The rule also includes a general definition section that defines "Indian" as "a person on the tribal rolls of an Indian tribe. A person on the tribal rolls is also known as an 'enrolled member' or a 'member' or an 'enrolled person' or an 'enrollee' or a 'tribal member.' " WAC 458-20-192(2)(a).

[11] WAC 458-20-192(5) provides:

This exclusion from tax includes all taxes (e.g., B&O tax, public utility tax, retail sales tax, use tax, cigarette tax). If the incidence of the tax falls on an Indian or a tribe, the tax is not imposed if the activity takes place in Indian country or the activity is treaty fishing rights related activity.

[12] In support of his argument that he is entitled to tax exemption because he is an Indian, Bercier relies on 25 U.S.C. § 1301(4)'s broad definition of "Indian":

"Indian" means any person who would be subject to the jurisdiction of the United States as an Indian under section 1153, title 18 [United States Code] if that person were to commit an offense listed in that section in Indian country to which that section applies.

But 25 U.S.C. § 1301 pertains solely to criminal jurisdiction; it does not pertain to state taxation issues.

Section (4), defining "Indian," was added to the statute after the United States Supreme Court held that tribes did not have authority to assert criminal jurisdiction over a defendant who was an Indian, but not a tribal member. *See Duro v. Reina*, 495 U.S. 676, 685, 110 S. Ct. 2053, 109 L. Ed. 2d 693 (1990).

The United States Supreme Court now recognizes the inherent tribal power to prosecute tribal members and nonmembers for criminal conduct. *United States v.*

## B. Case law

¶23 In *Washington v. Confederated Tribes of the Colville Indian Reservation*, several Indian tribes challenged Washington's imposition of cigarette tax and sales tax on purchases made by non-Indians and Indians who were not members of the tribe on whose reservation the sales took place. 447 U.S. 134, 139, 100 S. Ct. 2069, 65 L. Ed. 2d 10 (1980). Predating *Lara*,[13] the Court upheld Washington's record-keeping requirements and cigarette and sales taxes for nontribal members' on-reservation purchases. *Confederated Tribes of Colville*, 447 U.S. at 150-61. The Court ruled:

> Federal statutes, even given the broadest reading to which they are reasonably susceptible, cannot be said to pre-empt Washington's power to impose its taxes on Indians not members of the Tribe. We do not so read the Major Crimes Act, 18 U.S.C. § 1153, which at most provides for federal-court jurisdiction over crimes committed by Indians on another Tribe's reservation. Similarly, the mere fact that nonmembers resident on the reservation come within the definition of "Indian" for purposes of the Indian Reorganization Act of 1934, 48 Stat. 988, 25 U.S.C. 479, does not demonstrate a congressional intent to exempt such Indians from state taxation.
>
> Nor would the imposition of Washington's tax on these purchasers contravene the principle of tribal self-government, for the simple reason that nonmembers are not constituents of the governing Tribe. For most practical purposes those Indians stand on the same footing as non-Indians resident on the reservation.

*Confederated Tribes of Colville*, 447 U.S. at 160-61 (citation omitted).

---

*Lara*, 541 U.S. 193, 196, 124 S. Ct. 1628, 1631, 158 L. Ed. 2d 420 (2004). But the Court has also expressly limited the scope of its decision: "[*T*]*his case involves no interference with the power or authority of any State.*" 541 U.S. 205. (emphasis added). Thus, for purposes of Bercier's case, which does not involve criminal prosecution, we disregard 25 U.S.C. § 1301.

[13] *See* note 12, *supra*.

¶24 Bercier argues that *Confederated Tribes of Colville*, 447 U.S. 134, is no longer good law because it was abrogated by statutory amendments to 25 U.S.C. § 1301. Br. of Appellant at 21-22. As we mention in footnote 12, *supra*, Congress added the definition of "Indian" to 25 U.S.C. § 1301 to extend tribal *criminal* jurisdiction to tribal members and nonmembers alike. 25 U.S.C. § 1301 (4). This amendment, however, has no bearing on the State's ability to tax nonmembers. *See United States v. Lara*, 541 U.S. 193, 205, 124 S. Ct. 1628, 1636, 158 L. Ed. 2d 420 (2004).

¶25 In 1990, Congress added section (4) to 25 U.S.C. § 1301. The following year, the United States Supreme Court cited *Confederated Tribes of Colville* with approval in *Oklahoma Tax Commission v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 498 U.S. 505, 512, 111 S. Ct. 905, 112 L. Ed. 2d 1112 (1991). In *Oklahoma Tax Commission*, the Court held that, notwithstanding general tribal sovereignty, a state has authority to tax cigarette sales to nonmembers of an Indian tribe on land the United States holds in trust for the tribe. *Oklahoma Tax Comm'n*, 498 U.S. at 512.

¶26 Accordingly, *Confederated Tribes of Colville* still has precedential value and allows State taxation of non-Indians and nonmember Indians on reservations where tribal members are exempt from taxation.[14] Hence, Bercier is subject to State taxation under the cigarette and OTP statutes because he is a member of a tribe other than the Puyallup Tribe, on whose land he conducts business.

¶27 We hold that the trial court properly denied his request for declaratory judgment.

---

[14] The cases Bercier cites in his statement of additional authorities do not persuade us otherwise.

II. Consensual Business Relationship with Another Tribe

¶28 Bercier next contends that his consensual business relationship with the Puyallup tribe entitles him to a declaration of tax exemption.[15] We disagree.

 ¶29 The existence of a consensual business relationship with an Indian tribal member did not affect Division Three's analysis in *Gord v. Department of Revenue*, 50 Wn. App. 646, 749 P.2d 678, *review denied*, 109 Wn.2d 1011 (1987). Baker, a member of the Shoalwater Tribe, had leased property from Gord, a Puyallup Tribal member. *Gord*, 50 Wn. App. at 648. Gord allowed Baker to operate a retail cigarette store at her premises on the Puyallup reservation. *Gord*, 50 Wn. App. at 648. Baker was importing, distributing, and selling unstamped cigarettes. The Department seized his cigarettes and the truck and trailer carrying them. *Gord*, 50 Wn. App at 648-49. Baker argued he did not have to pay the cigarette tax because he was an enrolled member of an Indian tribe and thereby exempt. *Gord*, 50 Wn. App. at 652-54. The court rejected Baker's argument, citing WAC 458-20-192 and *Confederated Tribes of Colville*. *Gord*, 50 Wn. App. at 654-55. The existence of a consensual business relationship between members of different tribes did not impact the court's analysis.

¶30 A person does not become a tribal member simply by operating a retail business on the tribe's reservation with the tribe's or a tribal member's consent. Bercier admits that "[o]nly one [tribal] enrollment at a time is allowable," and he is a fully enrolled tribal member of the Fort Peck Tribe of Indians. Br. of Appellant at 27. These facts undermine Bercier's assertion that his consensual relationship with the Puyallup Tribe gives him the same benefits as a member of the Puyallup Tribe, including exemption from State taxation.

---

[15] Bercier cites no law supporting his proposition that a consensual relationship with a tribe exempts a person from State taxation. The cases that discuss "consensual relationships" focus primarily on *tribal jurisdiction* over nonmembers. *Montana v. United States*, 450 U.S. 544, 101 S. Ct. 1245, 67 L. Ed. 2d 493 (1981); *Hardin v. White Mountain Apache Tribe*, 779 F.2d 476, 478 (9th Cir. 1985).

¶31 Accordingly, we hold that the trial court properly dismissed this claim.

### III. COMPACT BETWEEN PUYALLUP TRIBE AND STATE

¶32 Bercier further contends the trial court erred in failing to enter a declaratory judgment prohibiting the Puyallup Tribe from entering into any kind of cigarette-tax-collection agreement with the State. We disagree for three reasons.

¶33 First, Bercier's action does not present a justiciable controversy. A court will hear a declaratory judgment action only when a justiciable controversy exists or an issue of major public importance is involved. *Kightlinger v. Pub. Util. Dist. No. 1 of Clark County*, 119 Wn. App. 501, 504, 81 P.3d 876 (2003).

> A justiciable controversy is: (1) an actual, present, and existing dispute; (2) between parties having genuine and opposing interests; (3) that involves interests that are direct and substantial, rather than potential, theoretical, abstract, or academic; and (4) a judicial determination will be final and conclusive.

*Kightlinger*, 119 Wn. App. at 504-05. Bercier's claim involves no justiciable controversy because he is concerned only with a hypothetical compact between the State and the Puyallup Tribe. He does not show that such a compact currently exists or is under consideration such that it would adversely affect him. Therefore, Bercier fails to present a justiciable controversy.

¶34 Second, Bercier's action does not involve an issue of major public concern. Even where no justiciable controversy exists, the court may hear a declaratory judgment action if it involves an issue of major public importance. *Kightlinger*, 119 Wn. App. at 505. Bercier, however, does not explain how a hypothetical compact between the State and the Puyallup Tribe is of major public importance in this context.

¶35 Third, Bercier lacks standing to bring this action. Under the Uniform Declaratory Judgments Act, chapter 7.24 RCW, standing and justiciability requirements tend to overlap. *Kightlinger*, 119 Wn. App. at 505. To have personal standing, a person seeking a declaratory judgment must meet the requirements of RCW 7.24.020:

> A person . . . whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder.

In addition, our Supreme Court recently reiterated the two-part test for determining standing in *Grant County Fire Protection District No. 5 v. City of Moses Lake*, 150 Wn.2d 791, 802, 83 P.3d 419 (2004): (1) The interest sought to be protected must be " ' "arguably within the zone of interests to be protected or regulated" ' "; (2) the challenged action must have caused an " ' "injury in fact." ' " *Grant County*, 150 Wn.2d at 802 (quoting *Save a Valuable Env't v. City of Bothell*, 89 Wn.2d 862, 866, 576 P.2d 401 (1978)). Bercier meets none of the statutory or *Grant* requirements.

¶36 Bercier has provided no information about the contents of a hypothetical compact; thus, we cannot evaluate the zone of interest to be protected. Furthermore, Bercier cannot show that the hypothetical compact has caused or will cause him injury in fact. Instead, he asserts standing based on his status as a taxpayer. Although taxpayers need not allege a direct, special, or pecuniary interest in the outcome of the suit to establish standing, they must first demonstrate that they asked the Attorney General to institute an action and the Attorney General refused. *Kightlinger*, 119 Wn. App. at 507 (citing *Robinson v. City of Seattle*, 102 Wn. App. 795, 10 P.3d 452 (2000)). Bercier has failed to show that he made such a demand on the Attorney General and that having done so, the Attorney General refused. Therefore, Bercier lacks standing as a taxpayer to bring this declaratory judgment action.

¶37 We hold, therefore, that the trial court properly denied Bercier's request for declaratory judgment.

## IV. OTHER CLAIMS

¶38 Under RAP 10.3(a)(3) and (5), an appellant's brief must include assignments of error, arguments supporting the issues presented for review, and citations to legal authority. We may exercise discretion in deciding whether to review a claim made without an assignment of error. *Vasquez v. Hawthorne*, 145 Wn.2d 103, 111, 33 P.3d 735 (2001).

¶39 Furthermore, without argument or authority to support it, an appellant waives an assignment of error. *Smith v. King*, 106 Wn.2d 443, 451-52, 722 P.2d 796 (1986). We need not consider arguments that are not developed in the briefs and for which a party has not cited authority. *State v. Dennison*, 115 Wn.2d 609, 629, 801 P.2d 193 (1990).

¶40 The following claims that Bercier makes lack an assignment of error or argument supported by legal authority. Therefore, we do not consider them.

### A. Motion to Compel Discovery

¶41 Bercier assigns error to the trial court's denial of his motion to compel discovery, in combination with granting the State's motion to dismiss. In his opening brief, however, Bercier merely refers to the fact that the trial court did not allow discovery. In support, he recites only his belief that the trial court should have allowed discovery. Bercier does not cite any legal authority or make any legal argument in support of his claim of error.

### B. Excessive Bond

¶42 In assignment of error no. 3, Bercier asserts, "The State wanted him to post more than the minimum bond."

Br. of Appellant at 3. Again, Bercier provides no legal argument in support of this assertion.

## C. 1981 Declaratory Judgment

¶43 Bercier assigns error to the trial court's alleged failure to comply with a 1981 consent decree, which he claims would have prohibited the State from collecting OTP taxes from him. But Bercier presents no legal argument in his opening brief and he offers only conclusory statements in his reply brief.

## D. Order of Dismissal

¶44 Bercier next assigns error to the trial court's failure to "complet[e] the order with a judgment indicating its disposition on each jurisdictional issue." Br. of Appellant at 4-5, assignment of error no. 11. Failure to object at trial precludes a party from raising the objection on appeal. *De Haven v. Gant*, 42 Wn. App. 666, 669, 713 P.2d 149, *review denied*, 105 Wn.2d 1015 (1986) (citing *Symes v. Teagle*, 67 Wn.2d 867, 873, 410 P.2d 594 (1966); *State ex rel. Partlow v. Law*, 39 Wn. App. 173, 178, 692 P.2d 863 (1984)). Bercier waived this error when his attorney signed the dismissal order without objection.

¶45 Moreover, Bercier devotes only a paragraph to this argument, in which he baldly asserts that the order was "cursory and incomplete." And he fails to specify what the trial court omitted from its order. Bercier cites two cases (where parties claimed an order was incomplete) from appellate courts in other states,[16] but neither has precedential value here.

## E. Discrimination

¶46 In his original complaint, Bercier alleged that the Department discriminates against him and Indian

---

[16] *Firemen's Ret. Sys. of St. Louis v. City of St. Louis*, 911 S.W.2d 679, 681 (Mo. Ct. App. 1995); *Post v. Bregman*, 349 Md. 142, 707 A.2d 806 (1998).

smokeshops because it does not impose the same tax and record-keeping obligations on military concessions. Bercier sought a declaratory judgment "that the exemption of sales on federal military bases from cigarette taxes is unconstitutional and that the same exemption be applied to sales on federally recognized Indian reservations." CP at 75.

¶47 On appeal, however, Bercier does not assign error to the trial court's dismissal of his discrimination claim, contrary to RAP 10.3(a)(3). Moreover, Bercier merely references the discrimination claim in his opening brief, without argument and citation to authority, contrary to RAP 10.3(a)(5). Therefore, we do not consider this claim.[17]

¶48 Affirmed.

HOUGHTON and ARMSTRONG, JJ., concur.

Review denied at 155 Wn.2d 1015 (2005).

---

[17] In his reply brief, Bercier includes argument about his discrimination claim. But we will not consider issues argued for the first time in a reply brief. *See Lewis v. City of Mercer Island*, 63 Wn. App. 29, 31, 817 P.2d 408, *review denied*, 117 Wn.2d 1024 (1991).

Although RAP 10.3(c) allows the reply brief to respond to arguments in the respondent's brief, here, the State addressed Bercier's discrimination claim in its brief simply to point out that Bercier appears on appeal to have abandoned the discrimination claim he asserted in his complaint below. Nor has the State's gratuitous inclusion of its argument, that there was no discrimination against Bercier for receiving different treatment than the military, opened the door to Bercier's arguing the merits of his discrimination claim for the first time in his reply brief.