# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| SAID FARZAD, Individually,<br><br>        Appellant,<br><br>  v.<br><br>STATE OF WASHINGTON DEPARTMENT OF HEALTH-MEDICAL QUALITY ASSURANCE COMMISSION; WASHINGTON PHYSICIANS HEALTH PROGRAM, a Washington non-profit Corporation doing business in Washington State; LARRY BERG AND "JANE DOE" BERG, and the marital community composed thereof; CHRIS BUNDY AND "JANE DOE" BUNDY, and the marital community composed thereof; MOLINA HEALTHCARE OF WASHINGTON, a Washington Corporation, John and Jane Does 1-10,<br><br>        Defendants. | No.  51340-4-II<br><br><br>UNPUBLISHED OPINION |

LEE, A.C.J. — Said Farzad appeals the superior court's order granting all the defendants' motions for summary judgment.  The superior court agreed that all the defendants were entitled to immunity and dismissed Farzad's claims.  We affirm the superior court's orders granting the defendants' motions for summary judgment.

FACTS

Farzad was a licensed psychiatrist. The Medical Quality Assurance Commission (MQAC), as the disciplinary authority for medical practitioners, received complaints regarding alleged boundary violations Farzad committed with two of his patients. Larry Berg, an MQAC staff attorney, was assigned to work on the investigation and subsequent disciplinary proceedings. Farzad did not deny any of the allegations; instead, Farzad insisted that his behavior was appropriate. Because Farzad admitted to the conduct alleged in the complaints, MQAC decided to pursue a Stipulation to Informal Disposition regarding the boundary violations. MQAC sent Farzad a Statement of Allegations, Summary of Evidence, and the Stipulation to Informal Disposition. However, Farzad rejected the Stipulation to Informal Disposition.

While this initial investigation was occurring, MQAC learned that Farzad had been arrested for making telephone threats to Molina Healthcare. Molina employees had called 911 to report that Farzad had called Molina and threatened to shoot everyone and bomb the building.[1] Based on Farzad's arrest, MQAC summarily suspended Farzad's medical license pending a hearing.

After a hearing regarding Farzad's license to practice medicine, MQAC determined that Farzad's attitude regarding his conduct was indicative of an underlying mental condition which rendered him unable to practice with reasonable skill and safety. Specifically, MQAC found,

> the ongoing "inability to practice with reasonable skill and safety" issue in this case can be seen in regular conversation with the Respondent and was clearly apparent to the Commission: It is the manner in which the Respondent attempts to dominate and manipulate everyone with whom he interacts in a constant effort to gain their

---

[1] The State later charged Farzad with telephone harassment and threats to bomb or injure property. A jury found Farzad guilty of telephone harassment. After the superior court granted summary judgment in this case, Farzad's conviction was reversed by the Ninth Circuit Court of Appeals. *Farzad v. Snohomish County Superior Court*, 769 Fed. Appx. 499 (2019).

> attention and admiration, whether it is through his grandiose presentation of self; his misleading and hyperbolic answers; his contemptuous and impatient dismissal of others; blame-shifting; launching into lengthy stories that overestimate his accomplishments or abilities; or his flagrant attempts to control every discourse to prove his superiority. The Respondent's demeanor and presentation during his testimony was simply and fundamentally manipulative, controlling, and grandiose, and indicates some type of underlying mental condition that does interfere with his ability to practice as a physician with reasonable skill and safety. The Respondent's testimony, the testimony of all the witnesses, the transcripts of the Respondent's text messages to patients, and the transcripts of the interviews with Molina employees, were all consistent in portraying someone whose behavior and mental state are destructively contaminated by a sense of personal entitlement.

Clerk's Papers (CP) at 639-40 (internal footnotes omitted).

MQAC suspended Farzad's license. MQAC's order required Farzad to submit to a neuropsychological evaluation. After completing the neuropsychological evaluation Farzad was required to do the following:

1. Sign all releases necessary to allow the evaluators to speak to MQAC and Washington Physicians Health Program (WPHP).

2. Provide a copy of the evaluation to MQAC and WPHP.

3. Make an appointment with WPHP to discuss the evaluation.

4. Follow WPHP's referrals for further examination and assessment.

5. Obtain a report from WPHP regarding whether Farzad is safe to return to practice or whether further treatment is necessary.

The order stated that Farzad could not apply for reinstatement of his license until WPHP provided MQAC with a final assessment indicating that Farzad is safe to return to practice. WPHP was contracted with the Washington Department of Health, through MQAC, "to obtain the services of a qualified provider for potentially impaired physicians, physician assistants, osteopathic

physicians, osteopathic physician assistants, podiatric physicians, veterinarians, and dentists." CP at 851 (emphasis omitted) (boldface omitted). Under the contract, WPHP was required to provide "education, assessment, intervention and referral, client support, administration and reporting." CP at 851 (emphasis omitted) (boldface omitted). Chris Bundy was the director of WPHP at the time of Farzad's lawsuit.

Farzad appealed MQAC's order to the superior court. While judicial review of MQAC's order was pending, Farzad completed the neuropsychological evaluation. Following receipt of the neuropsychological evaluation, WPHP recommended that Farzad obtain a neurology evaluation and begin psychotherapy. Farzad completed the neurology evaluation, which raised concerns that Farzad was suffering from a "neurodegenerative condition called frontal temporal lobar degeneration (FTLD), behavioral variant." CP at 828. At the same time, Farzad's relationship with WPHP became strained because Farzad engaged in threatening and aggressive communications with WPHP staff.

Ultimately, WPHP determined that Farzad would not likely be able to safely return to the practice of medicine. WPHP provided MQAC with notice of its recommendation. As a result, MQAC denied Farzad's repeated requests to reinstate his medical license.

Farzad filed a civil complaint for damages against MQAC, WPHP, and Molina. Farzad also individually named Larry Berg and Chris Bundy as defendants. The complaint related to MQAC's decision to suspend Farzad's medical license and alleged negligence, gross negligence, civil conspiracy, disparate treatment, unlawful retaliation, negligent and intentional infliction of emotional distress, libel, slander, false light, and defamation.

No. 51340-4-II

MQAC and Berg filed a motion for summary judgment, asserting absolute immunity from suit under RCW 18.130.300(1)[2] and the common law quasi-judicial immunity doctrine.[3] WPHP and Bundy filed a motion for summary judgment, alleging immunity from suit under RCW 18.130.300(2).[4] Molina filed a motion for summary judgment, asserting immunity for making reports to law enforcement under RCW 4.24.510.[5] The superior court granted all the defendants' motions for summary judgment based on their respective claims of immunity.

Farzad appeals.

ANALYSIS

Farzad appeals the superior court's orders granting the defendants' motions for summary judgment. Farzad's arguments focus on whether the superior court erred in granting summary judgment because there were genuine issues of material fact as to the factual issues he raised.

Farzad assigns error to the superior court's order granting the defendants' motions for summary judgment and presents four issues related to his assignment of error. One issues is

---

[2] RCW 18.130.300(1) provides, "The secretary, members of the boards or commissions, or individuals acting on their behalf are immune from suit in any action, civil or criminal, based on any disciplinary proceedings or other official acts performed in the course of their duties."

[3] *Janaszak v. State*, 173 Wn. App. 703, 718-19, 297 P.3d 723 (2013).

[4] RCW 18.130.300(2) provides, "A voluntary substance abuse monitoring program or an impaired practitioner program approved by a disciplining authority, or individuals acting on their behalf, are immune from suit in a civil action based on any disciplinary proceedings or other official acts performed in the course of their duties."

[5] RCW 4.24.510 provides, "A person who communicates a complaint or information to any branch or agency of federal, state, or local government . . . is immune from civil liability for claims based upon the communication to the agency or organization regarding any matter reasonably of concern to that agency or organization."

dispositive of this case–whether the superior court erred in concluding that the defendants were immune from suit as a matter of law.

With regard to immunity, Farzad included the following issue: "Did the trial court err when it dismissed this case on summary judgment by giving absolute immunity to the State of Washington and MQAC and the other defendants?" Br. of App. at 4. However, Farzad provides no argument or authority supporting this issue. We will not consider issues or assignments of error that are not supported by argument or citation to authority. RAP 10.3(a)(6); *Bercier v. Kiga*, 127 Wn. App. 809, 824, 103 P.3d 232 (2004), *review denied*, 155 Wn.2d 1015 (2005). "Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration." *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290, *review denied*, 136 Wn.2d 1015 (1998).

Here, Farzad cites only to legal authority for the fundamental standard of review for summary judgment. However, these well-established legal principles are unrelated to the specific issues regarding immunity that were decided on summary judgment.

Farzad provides no citation to relevant legal authority related to the immunity claims argued by the defendants. In fact, Farzad fails to even cite to the statutes granting immunity to the defendants in this case, RCW 18.130.300 and RCW 4.24.510. Instead of addressing the legal issues regarding the defendants' immunity from suit, Farzad simply provides a litany of factual assumptions he believes were perpetuated by the defendants and which he disputes.

Farzad highlights the factual disputes and disregards the issue of legal immunity, to which the superior court determined the defendants were entitled. But factual disputes regarding the underlying facts of a case are not relevant if the defendants are immune from suit. Because Farzad

No. 51340-4-II

does not provide any argument or citation to authority regarding the defendants' claims of immunity, we decline to consider his assignment of error relating to immunity. *Bercier*, 127 Wn. App. at 824. Therefore, we affirm the superior court's orders granting the defendants' motions for summary judgment.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

We concur:

Lee, A.C.J.

Worswick, J.

Cruser, J.

7