IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No.  38176-5-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| DARRYL WARREN POND, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Darryl Pond appeals his conviction for attempted child molestation in the first degree.  He contends the trial court committed evidentiary and constitutional error when denying him an opportunity to submit evidence that attributed an ulterior motive behind one of his victim's accusations against him.  Some of this proffered evidence violated the rape shield statute.  Regardless, the trial court did not breach its discretion when excluding the evidence.  We affirm the conviction.

FACTS

This prosecution arose from separate accusations asserted by A.B. (formerly known as A.P.) and S.L. against Darryl Pond.  Both children reported being touched in a sexual manner by Pond.  The accusation made by A.B. led to Pond's conviction for

attempted child molestation, and the accusation forwarded by S.L. resulted in Pond's child molestation charge, a charge on which the jury acquitted.

A.B. and S.L. are not biological sisters. Nevertheless, the two girls view themselves as sisters because they share a biological half-brother. Darryl Pond was previously married to A.B.'s and S.L.'s grandmother, Faye Pond. Thus, Pond was the two girls' step-grandfather until his divorce from their grandmother.

When A.B. attended sixth grade, she began a clandestine relationship with S.M., an eighth-grade boy at her middle school. S.M. gifted A.B. a cell phone to communicate with him. She engaged in a relationship with a boy and maintained a cell phone in violation of her parents' rules. A.B.'s parents prohibited her from maintaining a boyfriend.

A.B. and S.M. exchanged approximately 1,500 text messages during the time in which A.B. possessed the cell phone. Three messages between the friends, which messages Darryl Pond sought to introduce as evidence read:

> "I love you."
>
> "Tell your parents that you're going to a track meet so we can meet up instead."
>
> "I like what you did to me behind the school[. . .]last week."

Report of Proceedings (RP) (Apr. 13, 2021) at 212. A fourth message from sister S.L. to A.B. that Pond sought to introduce read:

2

[T]his is [S.L.] You should fuck [A.B.].

RP (Jan. 28, 2021) at 75.

When A.B.'s parents learned of her relationship with S.M., the parents journeyed to her school and confronted S.M. They also ordered A.B. to see a counselor.

On June 13, 2018, during her first counseling session, A.B. reported to her counselor that Darryl Pond inappropriately touched her during the previous summer. A.B. had not earlier reported to anyone any abuse. A.B. disclosed to her counselor details of the molestation. She and Pond were alone at the Pond residence while her grandmother worked outside the house. Pond left his bedroom, entered A.B.'s bedroom, and asked her if she wanted to come to his room. Once A.B. agreed, Pond carried her to his bedroom, where he laid her on the bed. According to A.B., when she turned on her side to sleep, Pond reached to pull her pajama shorts down. Pond's hands shook as he placed one hand on her upper thigh. A.B. rose from the bed and left Pond's bedroom. Later that morning, Pond directed A.B. to keep the occurrence a secret.

On January 14, 2019, S.L. revealed her accusation against Darryl Pond. During a conversation with her grandmother, Pamela LaFontaine, the grandmother discussed A.B.'s allegations. S.L. then described a night in 2017 when she and A.B. both slept at the Pond residence. S.L. was nine-years-old at the time of this sleepover.

According to S.L., Darryl Pond entered the bedroom she shared with A.B. while A.B. slept. Pond asked S.L. if she wanted to go downstairs to play computer games. In

the basement, Pond requested that S.L. sit on his lap on a chair in front of the computer. While S.L. sat on Pond's lap, he inserted his hands under her shorts and touched her vagina. He also slid his hands under her shirt and placed them on her bare breasts. S.L. stood at Pond's direction, after which her step-grandfather attempted to pull down her pants. S.L. exclaimed "no" and fled the basement. As S.L. left the basement, Pond called to her: "'This is our secret.'" RP (Apr. 15, 2021) at 235.

## PROCEDURE

Darryl Pond sought to admit evidence he believed would support his defense theory that A.B. lied about him to her counselor in order to deflect from her parent's disapproval and diminish the repercussions from this disapproval of her secret relationship with S.M. and her use of the cell phone. To support this motive theory, Darryl Pond sought to admit the following evidence:

(1) text messages between A.B. and S.M. that illustrate not just the existence of a relationship between them, but the existence, duration, and intimacy of a physical relationship between them;

(2) testimony that A.B.'s parents ordered her to see a counselor after discovery of her relationship with S.M. and her use of a cell phone; and

(3) testimony that A.B.'s mom misled the defense as to the disposition of the phone once it was discovered in her sock drawer.

4

The superior court declined to admit evidence from all three categories. The trial court reasoned that admitting the text messages exchanged between A.B. and S.M. and the message sent by S.L. would violate the rape shield statute since the messages revealed A.B.'s past sexual behavior. According to the trial court, Pond could argue a motive to deflect from the parents' ire without introducing evidence revealing why the parents ordered A.B. to engage in counseling. The trial court also deemed the text messages with S.M. to be unduly prejudicial. According to the superior court, evidence demonstrating the mother's dishonesty about the location of the phone and its disposition when found was irrelevant to whether A.B. possessed a motive to falsely accuse Pond.

The superior court permitted Darryl Pond to elicit testimony that A.B. used a cell phone to text a friend at school, that she hid the use of the phone from her parents, and that she denied the existence of the phone to her parents. In turn, the superior court allowed Pond to argue that A.B. possessed a motive to falsely accuse Pond because her parents learned she had maintained a cell phone in violation of their rules. Pond, however, withheld this argument during trial since the State presented no testimony as to the reason why A.B.'s parents ordered her to counseling.

The jury found Darryl Pond guilty on the charge of attempted child molestation of A.B. in the first degree and not guilty on the charge of child molestation of S.L. in the first degree.

LAW AND ANALYSIS

On appeal, Darryl Pond argues that the trial court violated his constitutional right, under the Sixth Amendment to the United States Constitution and Wash. Const. art. I, § 22, to present a defense when the court excluded evidence of (1) text messages between A.B. and S.M. that established the existence of their physical relationship, its duration, and the level of intimacy, (2) the reasons behind A.B.'s parents ordering her to counseling, and (3) A.B.'s mother's misleading the defense as to the disposition of A.B.'s cell phone.

When this reviewing court assesses whether the trial court breached a defendant's Sixth Amendment right to present a defense, we begin our analysis by reviewing the trial court's evidentiary rulings under state evidence rules. *State v. Jennings*, 199 Wn.2d 53, 58, 502 P.3d 1255 (2022). If this court finds that the trial court did not abuse its discretion with respect to its evidentiary rulings, the court reviews de novo whether the exclusion of evidence violated a defendant's Sixth Amendment right to present a defense. *State v. Jennings*, 199 Wn.2d 53, 58 (2022).

### Rape Shield Statute

We first review whether any of Darryl Pond's proffered evidence violated Washington's rape shield statute. The statute, RCW 9A.44.020 declares, in pertinent part:

(2) Evidence of the victim's past sexual behavior including but not limited to the victim's marital history, divorce history, or general reputation for promiscuity, nonchastity, or sexual mores contrary to community standards is inadmissible on the issue of credibility and is inadmissible to prove the victim's consent except as provided in subsection (3) of this section, but when the perpetrator and the victim have engaged in sexual intercourse with each other in the past, and when the past behavior is material to the issue of consent, evidence concerning the past behavior between the perpetrator and the victim may be admissible on the issue of consent to the offense.

. . . .

(4) Nothing in this section shall be construed to prohibit cross-examination of the victim on the issue of past sexual behavior when the prosecution presents evidence in its case in chief tending to prove the nature of the victim's past sexual behavior, but the court may require a hearing pursuant to subsection (3) of this section concerning such evidence.

Generally, the accused seeks to introduce evidence of the victim's earlier sexual behavior in order to impugn the victim as possessing low morals. Darryl Pond sought to introduce the evidence, not for this typical purpose, but to show A.B. sought to distract from her parents' disappointment in her and to gain sympathy from the parents because of the misbehavior of Pond. Pond argues that the rape shield statute does not preclude evidence of past sexual behavior to show a motive behind asserting false accusations. We disagree.

The rape shield statute precludes evidence of past sexual behavior for the purpose of challenging the credibility of the witness. RCW 9A.44.020(2). Darryl Pond wished to employ text messages to challenge the credibility of A.B. by showing a motivation to lie

because she engaged in behavior disapproved of by her parents. Thus, the statute precluded the proffered text messages.

Darryl Pond seeks to draw parallels between his prosecution and *State v. Horton*, 116 Wn. App. 909, 920, 68 P.3d 1145 (2003). In *Horton*, this court reversed Thomas Ray Horton's conviction because the trial court disallowed evidence of his alleged victim's past sexual behavior and statements she made to police officers regarding her past sexual behavior. During direct examination, the victim testified she had not engaged in sexual intercourse with anyone else and her testimony implied that the trauma from the rape ripped her hymen. Horton sought to show the victim provided inaccurate testimony at trial. The Court of Appeals ruled that the exception to the rape shield statute, found in RCW 9A.44.020(4), applied.

The State of Washington never introduced evidence of A.B.'s past sexual behavior or lack thereof in Darryl Pond's prosecution. Thus, *State v. Horton* affords Pond no aid.

Darryl Pond mentions that the legislature directed the rape shield statute at the misuse of prior sexual conduct evidence based on an antiquated and illogical premise that a woman's promiscuity relates to her truth telling. *State v. Hudlow*, 99 Wn.2d 1, 8, 659 P.2d 514 (1983). Pond impliedly contends that the exclusion of his proffered evidence fails to fulfill this legislative purpose. No Washington decision limits application of the rape shield statute to such circumstances, however. Pond directly sought to challenge the credibility of A.B. by indirectly impugning her motives based on a sexual relationship.

8

We also observe that the trial court permitted Darryl Pond to elicit testimony that A.B. maintained a cell phone to communicate with a friend against her parents' instructions, which evidence would relate to the purported ulterior motive.

We question whether the text message "I love you" pertains to sexual behavior. No Washington case has defined the phrase "past sexual behavior" for purposes of the rape shield statute. *State v. Jones*, 168 Wn.2d 713, 722, 230 P.3d 576 (2010). Nevertheless, Darryl Pond does not contend that this one text is unrelated to sexual behavior. The message could be wrapped in romantic feelings and physical attraction of a young woman for a young man rather on sexual behavior.

Right to a Defense

The Sixth Amendment to the United States Constitution and Wash. Const. art. I, § 22 provide that a defendant has the right to present evidence to support his defense. *State v. Strizheus*, 163 Wn. App. 820, 829-30, 262 P.3d 100 (2011). This right extends only to relevant and admissible evidence. *State v. Strizheus*, 163 Wn. App. 820, 830 (2011). ER 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." The trial court even holds discretion to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the

jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." ER 403.

Darryl Pond argues that evidence of the reason behind A.B.'s parents ordering her to counseling after they discovered her secret cell phone and secret relationship with S.M. bears relevance to his defense theory that A.B. maintained a motive to falsely accuse him of molestation. While the trial court did not deem this evidence relevant to the disclosure A.B. made to her counselor during her first counseling session, the trial court allowed Pond to present evidence establishing that A.B.'s parents ordered her to see a counselor after they discovered the cell phone she hid from them, which she had used to arrange secret meetings with a "friend." The trial court excluded the offered evidence of A.B. and S.M.'s relationship to explain why A.B.'s parents ordered her to see a counselor because it determined aspects of that relationship were highly prejudicial and Pond could present the same argument without them. By limiting Pond's desired defense theory argument in this manner, the trial court permissibly filtered out the prejudicial aspects of A.B. and S.M.'s relationship while still permitting Pond to present the argument that A.B.'s parents ordered her to see a counselor because she broke their rules by being secretive with a cell phone and meeting with a friend without their permission. The trial court did not abuse its discretion.

Even with the court's permission to present evidence of A.B. breaking parental rules, Darryl Pond conceded at trial that this evidence lacked relevance to his defense if

10

the State did not introduce testimony that A.B. first revealed Pond's abuse to the counselor. The State did not introduce such testimony.

Darryl Pond argues that evidence of A.B.'s mother's misleading of the defense as to the location of A.B.'s cell phone and its disposition once discovered is relevant to his defense theory that A.B. had a motive to make a false accusation against him. Pond asserts this argument at the beginning of his brief, but fails to address in his analysis why the evidence bears relevance to his motive theory. We need not consider arguments that a party fails to develop in his briefs. *American Federation of Teachers, Local 1950 v. Public Employment Relations Commission*, 18 Wn. App. 2d 914, 921, 493 P.3d 1212 (2021), *review denied*, 198 Wn.2d 1038, 501 P.3d 146 (2022); *Bercier v. Kiga*, 127 Wn. App. 809, 824, 103 P.3d 232 (2004).

## STATEMENT OF ADDITIONAL GROUNDS

On appeal, Darryl Pond forwards two grounds in his statements of additional grounds. He complains that the trial court prohibited him from mentioning his restless limb syndrome, which occasionally caused him to wake up during the night. He also protests the trial court's preclusion of evidence that he took pills for the syndrome. Nevertheless, Pond does not cite the page or pages in the record that document the trial court's ruling. Nor does Pond argue the relevance of this evidence in his statement of additional grounds. Although a defendant is not required to provide citations to the record or to authorities in his statement of additional grounds, this court "will not

11

consider a defendant's statement of additional grounds for review if it does not inform the court of the nature and occurrence of alleged errors." RAP 10.10(c). Furthermore, this court need not search the record in support of claims made in an accused's statement of additional grounds for review. RAP 10.10(c).

CONCLUSION

We affirm Darryl Pond's conviction.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Lawrence-Berrey, A.C.J.

_____
Pennell, J.